UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **LOONEY RICKS KISS ARCHITECTS, INC.** | **CIVIL ACTION NO. 07-cv-0572(Lead)** <br> **Consolidated with No. 09-cv-0471(Member)** |
| **VERSUS** | **JUDGE HICKS** |
| **STEVE H. BRYAN, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

### DEFENDANTS' SURREPLY IN RESPONSE TO PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COPYRIGHT VALIDITY

NOW INTO COURT, through undersigned counsel, come Defendants,[1] who file this surreply brief in response to plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment on Copyright Validity ("Reply Brief") [Dkt. No. 224].

The narrow focus of this surreply is to respond to new arguments and a declaration containing new assertions presented for the first time in plaintiff's Reply Brief.

**I.  This Court Has Jurisdiction to Consider Defendants' Arguments That Plaintiff's Copyrights Are Not Valid**

Plaintiff's assertion that this Court cannot consider the defendants' invalidity arguments is wrong for multiple reasons.  First, plaintiff either misunderstands or misrepresents the scope and holding of *Tiseo Architects, Inc. v. SSOE, Inc.,* 431 F.Supp.2d 735 (E.D. Mich. 2006). Second, the Fifth Circuit disagrees with *Tiseo*, at least the way that plaintiff represents *Tiseo* to this Court.  Finally, federal courts routinely consider the validity of copyright registrations.

---

[1] Steve Bryan; Bryan Investments, LLC; Bryan Construction Company, Inc.; The Bryan Company; CLA, LLC; Island Park Apartments, LLC; Cypress Lake Development, LLC; Island Park Development, LLC; Grand Pointe Apartments, LLC; Riverside Bluffs, Inc.; Dial Equities, Inc.; Key Associates, LLC; Grand Pointe - NE Limited Partnership; and defendants referred to as the "Cypress Lake Owners" and the "Island Park Owners."

1

The *Tiseo* Court applied the doctrine of primary jurisdiction in an instance where the defendant-alleged infringer had *already* filed a request with the Copyright Office to cancel the plaintiff's copyright registration. The Court did *not* hold that a defendant raising issues of invalidity must first raise such issues with the Copyright Office. Such a ruling would be tantamount to requiring an exhaustion of administrative remedies, a position other courts have considered and rejected. In *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.,* 307 F.3d 775 (9th Cir. 2002), the Court on its own motion referred the issue of the validity of a copyright registration to the Copyright Office, based upon the doctrine of primary jurisdiction. The *Syntek* Court held in that instance that the Copyright Office should initially consider the validity issue, since the validity issue before the Court was one of first impression and complicated. The court *stayed* the case while the parties pursued a decision from the Copyright Office. The *Syntek* Court noted that the doctrine of primary jurisdiction is not equivalent to the requirement of exhaustion of administrative remedies. Indeed, the Court observed that the Copyright Office "does not invite and will generally not respond favorably to, requests to cancel a completed registration by a party other than the owner of the copyright." *Syntek,* 307 F.3d at 781. Plaintiff's assertion that *Tiseo* requires defendants to submit copyright validity issues to the Copyright Office is simply wrong.

Further, the clear rule in the Fifth Circuit is that federal courts may consider the validity of copyright registrations. In *Geoscan, Inc. of Texas v. Geotrace Technologies, Inc.,* 226 F.3d 387 (5th Cir. 2000), the Court determined that a registration was invalid because the registrant had failed to deposit a complete copy of the original source code for the subject software. The determination of whether the registration was valid was within the court's jurisdiction to decide.

*Geoscan*, 226 F.3d at 393. The Court did not require the defendant or plaintiff to seek the opinion of the Copyright Office regarding the validity of the registration.

Finally, in the Fifth Circuit and elsewhere, federal courts routinely consider the validity of copyright registrations. See for example: *Int'l Biotical Corp. v. Associated Mills, Inc.*, 239 F.Supp 511 (N.D. Ill. 1964)(Court determined that plaintiff's copyright registrations were "unenforceable" due to plaintiff's misrepresentations to the Copyright Office); *Johnson v. Automotive Ventures, Inc.,* 890 F.Supp 507 (W.D. Va. 1995)(Court considered the issue of validity of a registration raised by defendant's arguments that there were misstatements and omissions in the application); *Escholar, LLC v. Otis Educational Sys., Inc.* 2005 WL 2977569 (S.D.N.Y. 2005)(Court fully considered the issue of validity of the copyright registration); *Wilchcombe v. Teevee Toons, Inc.,* 515 F.Supp.2d 1297 (N.D. Ga. 2007) (Court considered defendant's assertions that registration was invalid due to defective deposit with Copyright Office); and *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151 (1st Cir. 2007)(Court invalidated copyright registration based upon finding of omission of a proper deposit copy).

Plaintiff attempts to extend the presumption of copyright validity by preventing this Court from considering defendants' arguments of invalidity. This Court's jurisdiction is not so limited, and plaintiff's efforts must be rejected. The Fifth Circuit allows consideration of arguments of invalidity, and federal courts routinely conduct such evaluations.

**II. The Island Park Plans Are Ultimately Derived From a Prior Existing Work owned by JHP; Genuine Issues of Material Fact Exist Regarding the Extent to Which Island Park is Plaintiff's Original Work**

Plaintiff goes to great lengths in its Reply Brief trying to show that the Island Park plans were not derived from the Morgan Falls plans created by Paige Close's prior employer (JHP). Notably, plaintiff does not dispute that Paige Close and the Island Park design team had access to

3

the Morgan Falls plans while preparing the Island Park plans. However, LRK asserts in its Reply Brief that in spite of having access to JHP's Morgan Falls plans, the design team instead used another LRK set of plans as a source for the Island Park plans. Plaintiff asserts that various abbreviations, tables and charts appearing in both the Morgan Falls plans and the Island Park plans were not copied by LRK from Morgan Falls, but instead were copied by LRK from "a design [Jefferson on the River] that Paige Close did for the same client [JPI] entirely after he left JHP and joined LRK."[2] What plaintiff fails to tell the Court, and what plaintiff has previously admitted, is that its Jefferson on the River plans were copied from JHP's Morgan Falls plans, owned by Paige Close's prior employer. If Island Park is derived in part from Jefferson on the River, and Jefferson on the River is derived in part from JHP's Morgan Falls plans, then genuine issues of material fact exist regarding the extent to which the Island Park plans can be considered the original work of LRK, and protected by copyright.

Paige Close left the employ of JHP to became an employee of LRK in 1995. Shortly thereafter a dispute arose between JHP and LRK regarding the use by LRK of JHP plans. JHP sued LRK and Paige Close for copyright infringement in 1995 in Federal Court in Memphis, Tennessee.[3] That suit was settled in February 1997. As part of the settlement agreement LRK was allowed to continue to "prepare derivative works from" certain LRK work product, including Jefferson on the River. *The settlement agreement entered into by LRK specifically states that LRK's Jefferson on the River plans*[4] *are themselves "derivative works of one or more*

---

[2] Plaintiff's Reply Brief, p. 23 [Dkt. No. 224].
[3] *James, Harwick + Partners, Inc. v. Looney Ricks Kiss Architects, Inc. and Paige C. Close*, Civil Action No. 95-3009, attached as Exhibit 1.
[4] As well as the LRK plans for Jefferson at Vinings, Jefferson at Rock Creek Ranch, and Jefferson Creek.

of James, Harwick's *Jefferson Architectural Works and Jefferson Technical Plans*."[5] Exhibit B to the settlement agreement (see Exhibit 2 hereto, filed under seal) lists various LRK drawings, including the Jefferson on the River plans, and specifically sets out which JHP drawings served as the source for those listed LRK drawings. Not surprisingly, the listed JHP "source" documents for LRK's Jefferson on the River plans include the JHP Morgan Falls plans. Indeed, pages 11 through 16 of Exhibit B list *forty* different Jefferson on the River drawing sheets, and the corresponding JHP drawing sheets from which the plans were derived, with most being derived from Morgan Falls. Accordingly, plaintiff has admitted that its Jefferson on the River plans, now asserted to have been used as a source for the Island Park plans, are themselves derived from JHP product including Morgan Falls. Genuine issues of material fact exist as to what portions of the Island Park plans are original to LRK, and what portions are ultimately derived from JHP work product.

Frank Ricks' deposition testimony confirms the above. Ricks, a principal of LRK, was deposed on March 5, 2009 and was questioned regarding the 1997 settlement agreement between JHP and LRK. His testimony confirms that the Jefferson on the River plans, used as a source for Island Park, were derived from JHP's Morgan Falls plans.

> Q. Is it your understanding that the 18 pages of listed drawings that we just looked at [Exhibit B] is a listing on the left-hand side of LRK drawings and on the right-hand side is the identifier of a JHP drawing that served as the source for the LRK drawings?
> A. Yes.[6]

\* \* \*

---

[5] The entire settlement agreement is filed as Exhibit 2, under seal, pursuant to assertions of confidentiality raised by LRK. The attached copy, produced by plaintiff and Bates labeled LRK 09245-09277, is not a fully executed copy of the settlement agreement. Frank Ricks, a principal of LRK, testified that the document Bates labeled LRK 09245-09277 is a copy of the settlement agreement entered into between JHP and LRK. (See Dep. of Frank Ricks, March 5, 2009, p. 27, attached as Exhibit 3).

[6] Dep. of Frank Ricks, March 5, 2009, pp. 28 - 29, attached as Exhibit 3.

> Q. And those LRK plans listed to the left [on Exhibit B], you believe that they're LRK plans that are derived from the corresponding plans to the right on that document, correct?
>
> A. Correct.[7]

Plaintiff admits, both in the settlement agreement and in the above testimony, that its Jefferson on the River plans are derived from JHP plans, including Morgan Falls. Plaintiff further admits that it utilized the Jefferson on the River plans as a source for the Island Park plans. Questions of fact clearly exist regarding the extent to which the Island Park plans are original to plaintiff. These questions must be resolved by the trier of fact. Copyright protection "hinges upon the work originality, as 'copyright protection may extend only to those components of a work that are original to the author.'" *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 681 (S.D. Tex. 2000) (*citing Feist Publications v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 348 (1991)).

### III. Genuine Issues of Material Fact Exist as to the Ownership of Copyrights in the Hamilton Rendering

Genuine issues of material fact exist which preclude the granting of summary judgment regarding the ownership of the copyright in the rendering prepared by Phil Hamilton. Federal copyright law 17 U.S.C. § 101, defining a "work made for hire," requires that the parties "expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." Plaintiff admits that no written agreement existed back in 1995 regarding the rendering for Island Park. However, in response to defendants' opposition to this motion, plaintiff attempts to cure its failure to enter into a written agreement by having Mr. Hamilton

---

[7] Dep. of Frank Ricks, March 5, 2009, p. 95, attached as Exhibit 3.

sign a "Memorandum of Work Made for Hire Agreement" on October 5, 2009.[8]  Even assuming that the law in the Fifth Circuit is that an after-the-fact written agreement (*14 years* after-the-fact in this instance) can suffice, there is no dispute that the law remains that the parties must have intended, back in 1995, that the rendering was to be a work made for hire.  That is, the new written agreement must confirm, not alter, the prior unwritten understanding.  See *Compaq Computer Corp. v. Ergonome Inc.,* 210 F.Supp.2d 839, 843 (S.D. Tex. 2001)(the Court assumed "that the writing requirement of § 101(2) can be met by a writing executed after the work is created, *if the writing confirms a prior agreement, either explicit or implicit, made before the creation of the work.*" (emphasis added)).  In this case, the existence of that prior unwritten agreement is very much in dispute.

Carson Looney, the LRK principal identified as "responsible for LRK's relationship with Mr. Hamilton,"[9] presented conflicting testimony in his deposition regarding the prior "agreement" now alleged by LRK.  First he stated that the basis for his belief that LRK owns the copyright to the rendering was discussions with Mr. Hamilton:

> Q. And what's the basis for your belief that LRK owns those copyrights?
> A. *Discussions with Phil Hamilton.*[10]

However, when pressed on those "discussions," Mr. Looney backtracked, stating he does not know of any such discussions:

> Q. Have you actually discussed with Mr. Hamilton who owns the copyright interest or intellectual property interest in the renderings he does for LRK?
> A. *I'm not aware of any discussions*.

---

[8] See Exhibit 12 to plaintiff's Reply Brief [Dkt. No. 224].
[9] Plaintiff's Reply Brief, p. 31 [Dkt. No. 224].
[10] Dep. of Carson Looney, June 11, 2008, p. 18, attached as Exhibit 4.

7

Further, Paige Close, the "director of [LRK's] multi-family studio"[11] and the "project designer" of the Island Park project,[12] testified in 2008 that it was *Mr. Hamilton* who owned the copyrights to the rendering, not LRK:

> Q. Was there any written agreement with Mr. Hamilton concerning the ownership of any rights to the rendering?
>
> A. *Not that I recall.*
>
> Q. Do you remember any oral agreement you had concerning any rights to the rendering?
>
> A. *Well, just ethically he's the author of his work so he owns the copyright, -- by right -- to his work.*
>
> Q. So your opinion is that the copyright on the rendering would be Mr. Hamilton's?
>
> A. *Yes.*

It is only now, *14 years* after-the-fact and only in response to defenses raised by the defendants, that a self-serving written agreement is created by plaintiff, no doubt carefully drafted by plaintiff's counsel. Considering the above testimony (taken *before* the defendants raised the issue in defense to plaintiff's motion for summary judgment) and the timing of the creation of the self-serving "written agreement," genuine issues of material fact exist as to whether LRK and Phil Hamilton intended, back in 1995, that Mr. Hamilton's rendering be considered a "work made for hire." This issue should be considered and resolved by the trier of fact.

**IV. Conclusion**

Defendants respectfully submit that summary judgment on the issue of the validity of plaintiff's copyrights must be denied. This Court has jurisdiction to consider the defendants'

---

[11] Dep. of Paige Close, June 10, 2008, p.87, attached as Exhibit 5.
[12] Declaration of Paige Close, p. 2 (attached as Exhibit 8 to plaintiff's Reply Brief [Dkt. No. 224]).

8

assertions regarding invalidity. Genuine issues of material fact exist regarding the originality and ownership of the plaintiff's claimed copyrights, as asserted herein and in defendants' original brief in opposition to plaintiff's motion.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:  /s/ Allen D. Darden

Allen D. Darden, Bar Roll No. 14961
II City Plaza
400 Convention Street • Suite 1100
Baton Rouge, Louisiana 70802-5618
P.O. Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: (225) 346-0285
Telecopier: (225) 381-9197
Email: dardena@phelps.com

Attorneys for defendants, Steve Bryan; Bryan Investments, LLC; Bryan Construction Company, Inc.; Grand Pointe Apartments, LLC; Riverside Bluffs, Inc.; Cypress Lake Owners and Island Park Owners

**CASTEN & PEARCE, APLC**

BY:  /s/ D. Brennan Hussey

D. Brennan Hussey, Bar Roll No.: 18268
401 Edwards Street, Suite 2100 (71101)
Post Office Box 1180
Shreveport, LA 71163-1180
Telephone: (318) 221-3444
Telecopier: (318) 221-8811
Email: bhussey@castenandpearce.com

Attorneys for defendants, Steve Bryan; Bryan Construction Company, Inc.; The Bryan Company; Cypress Lake Development, LLC; Island Park Development, LLC; and Grand Pointe Apartments, LLC

9

| CASTEN & PEARCE, APLC | MAYER, SMITH & ROBERTS, LLP |
|---|---|
| BY: /s/ Marshall R. Pearce | BY: /s/ Caldwell Roberts, Jr. |
| Marshall R. Pearce, Bar Roll No.: 10375<br>401 Edwards Street, Suite 2100 (71101)<br>Post Office Box 1180<br>Shreveport, LA 71163-1180<br>Telephone: (318) 221-3444<br>Telecopier: (318) 221-8811 | Caldwell Roberts, Jr., Bar Roll No.: 20343<br>1550 Creswell Avenue<br>Shreveport, LA 71101<br>Telephone: (318) 222-2135<br>Telecopier: (318) 222-6420<br>Email: colly@msrlaw.com |
| Attorneys for defendants, Steve Bryan; The Bryan Company and Bryan Construction, Inc. | Attorney for defendant, Island Park Apartments, LLC |

| ARMOUR LAW FIRM | LOCKE LORD BISSELL & LIDDELL, LLP |
|---|---|
| BY: /s/ Bonita K. Preuett-Armour | BY: /s/ Monique Lafontaine |
| Bonita K. Preuett-Armour, Bar Roll No.: 21827<br>1744 Jackson Street<br>Post Office Box 710<br>Alexandria, LA 71309-0710<br>Telephone: (318) 442-6611<br>Telecopier: (318) 442-4719<br>Email: bkparmour@armourlaw.net | Monique Lafontaine, Bar Roll No.: 21827<br>601 Poydras Street, Suite 2660<br>New Orleans, Louisiana 70130<br>Telephone: (504) 558-5133<br>Telecopier: (504) 681-5233<br>Email: mlafonta@lockelord.com |
| Attorneys for defendant, CLA, LLC | Attorneys for defendants, Dial Equities, Inc.; Key Associates, LLC; Grand Pointe - NE Limited Partnership |

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been electronically filed with the Clerk of Court this 11th day of January, 2010 by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Allen D. Darden
Allen D. Darden

PD.3903187.1