UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| LAFAYETTE INSURANCE COMPANY | § | CIVIL ACTION NO. __5:07-cv-0572____ |
| | § | Consolidated with __5:09-cv-00471__ |
| | § | |
| VERSUS | § | JUDGE HICKS |
| | § | |
| LOONEY RICKS KISS ARCHITECTS, | § | |
| INC., STEVE H. BRYAN, BRYAN | § | MAGISTRATE JUDGE HORNSBY |
| CONSTRUCTION COMPANY, INC., | § | |
| THE BRYAN COMPANY, ET AL | § | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**
**ON BEHALF OF LAFAYETTE INSURANCE COMPANY**


LUNN, IRION, SALLEY, CARLISLE & GARDNER
*A Professional Law Corporation*

P. O. Box 1534
Shreveport, LA 71165-1534
(318)222-0665 Telephone          BY_____s/LDL_____
(318)220-3265 Facsimile              GERALD M. JOHNSON, JR.
                                                    Bar Roll No. 16987
                                                    LISA D. LOBRANO
                                                    Bar Roll No. 29954
                                              ATTORNEYS FOR LAFAYETTE INSURANCE
                                              COMPANY

## TABLE OF CONTENTS

I.      TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

II.     TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

III.    STATUTES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

IV.     OTHER AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

V.      EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

VI.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY . . . . . . . . . . . . . . .  1

VII.    TERMS OF THE LAFAYETTE POLICY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

VIII.   LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

        1.      No Coverage Under Coverage "A" for Bodily Injury or Property
                Damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

        2.      No Coverage Under Coverage "B" for Personal and Advertising Injury
                Liability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

                a.      Appraisal by Tom W. Cook, M.A.I. . . . . . . . . . . . . . . . . . . . . . . .  11

                b.      Change in Land Use Classification . . . . . . . . . . . . . . . . . . . . . .  13

                c.      Issuance of Building Permits  . . . . . . . . . . . . . . . . . . . . . . . . . .  16

        3.      Policy Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

        4.      No Duty to Defend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

IV.     CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

**AUTHORITIES**

1.   *Smith v. Matthews*, 611 So.2d 1377 (La. 1993) . . . . . . . . . . . . . . . . . . . . . . . . .  5

2.   *Louisiana Insurance Guarantee Association v. Interstate Fire and Casualty Company*, 630 So.2d 759 (La. 1994) . . . . . . . . . . . . . . . . . . . . . . . 5-6

3.   *KLL Consultants, Inc. v. Aetna Casualty & Surety Company of Illinois*, 738 So.2d 691 (La. App. 5 Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

4.   *Central Louisiana Electric Co., Inc. v. Westinghouse Electric Corporation*, 579 So.2d 981 (La. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

5.   *Muse v. Metropolitan Life Insurance Co.*, 192 So.2d 72 (La. 1939) . . . . . . . . . .  7

6.   *Chavez v. Arte Publico Press*, 139 F.3d 504 (C.A. 5 1998) . . . . . . . . . . . . . . 7-8

7.   *Tenneco, Inc. v. U.S.*, 433 F.2d 1345 (C.A. 5 1970) . . . . . . . . . . . . . . . . . . . . 7-8

8.   *Houston Chronicle Publishing Co. v. U.S.*, 481 F.2d 1240 (C.A. 5 1973) . . . . 7-8

9.   *Salco Construction v. Simpson*, 62 Fed.Appx. 557; 2003 WL 1202785 (C.A. 5 (La.) 2/27/03) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

10.  *American Home Assurance Company v. The Selective Group, Inc.*, 2006 WL 1691152 (Mich. App. 6/20/06) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

11.  *Sport Tech, Inc. v. SFI Manufacturing, Inc.*, 838 So.2d 807 (La. App. 2 Cir. 12/20/02) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

12.  *Yount v. Maisano*, 627 So.2d 148 (La. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 19-20

13.  *Adams v. Frost*, 990 So.2d 751 (La. App. 2 Cir. 8/20/08) . . . . . . . . . . . . . . . .  20

14.  *Vaughn v. Franklin*, 785 So.2d 79 (La. App. 1 Cir. 3/28/01) . . . . . . . . . . . . . . .  20

15.  *Bryan v. Motwani*, 683 So.2d 880 (La. App. 4 Cir. 1996) . . . . . . . . . . . . . . . .  20

16.  *Everest and Jennings, Inc. v. American Motorist Insurance Co.*, 23 F.3d 226 (C.A. 9 (Cal.) 4/13/94) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

17.  *American Guaranty and Liability Insurance Co. v. 1906 Co.*, 129 F.3d 802 (C.A. 5 (Miss) 12/9/97) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

**STATUTES**

1.   17 U.S.C. § 101 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   Louisiana Civil Code Art. 2045 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3.   Louisiana Civil Code Art. 1022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4.   Louisiana Civil Code Art. 2046 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**OTHER AUTHORITIES**

1.   Merriam-Webster Dictionary (10th ed. 1996)  . . . . . . . . . . . . . . . . . . . . . . . . . 7

2.   12 COUCH ON INSURANCE § 45:56 (2d ed. 1981 & Supp. 1996) . . . . . . . . 20

**EXHIBITS**

A.   Affidavit of Gloria Gunning . . . . . . . . . . . . . . . . . . . . . . . . .   4-5,8-9,11,17,20-21
     1.   Lafayette Insurance Company policy # 85-211-489, to *The Bryan Companies, Inc., Bryan Construction Company, Inc., Bryan Contractors, L.L.C., Bryan Homes, Inc., and Cypress Lake Apartments* . . . . . . .   4-5,8-9,11,17,20-21

B.   Certificate of Substantial Completion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,11

C.   Looney Ricks Kiss Architects, Inc.'s Responses to Interrogatories and Requests for Production of Documents by Lafayette Insurance Company . . . . . . . . . . . 10,13

D.   Memorandum from Stephen G. Hill, AIA (November 26, 2001) . . . . . . . . . . . 11

E.   Deposition of Steve Bryan  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

F.   Deposition of John King . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,14

G.   Appraisal of Tom W. Cook, M.A.I. (November 2, 2000) . . . . . . . . . . . . . . . . 12

H.   *Salco Construction, Inc. v. Simpson*, 62 Fed.Appx. 557; 2003 WL 1202785 (C.A.5 (La.)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

I.   *American Home Assurance Company v. The Selective Group, Inc.*, 2006 WL 1691152 (Mich. App. 6/20/06)  . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

J.   Standard Form of Agreement between The Bryan Company and Looney Ricks Kiss Architects, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

K.   Deposition of Stephen Graham Hill  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| LAFAYETTE INSURANCE COMPANY | § | CIVIL ACTION NO. 5:07-cv-0572 |
| | § | Consolidated with   5:09-cv-00471 |
| | § | |
| VERSUS | § | JUDGE HICKS |
| | § | |
| LOONEY RICKS KISS ARCHITECTS, | § | |
| INC., STEVE H. BRYAN, BRYAN | § | MAGISTRATE JUDGE HORNSBY |
| CONSTRUCTION COMPANY, INC., | § | |
| THE BRYAN COMPANY, ET AL | § | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF LAFAYETTE INSURANCE COMPANY**

MAY IT PLEASE THE COURT:

This suit was instituted by way of a complaint filed by the main action Plaintiff, Looney Ricks Kiss Architects, Inc. (hereinafter referred to as "LRK"), on March 27, 2007. That action is one for copyright infringement under the Copyright Act of the United States (17 U.S.C. § 101, *et seq*.).  In the member action, Lafayette Insurance Company instituted a Complaint for Declaratory Judgment on March 24, 2009, seeking a declaration that there is no duty to defend nor coverage under the policy for the claims of LRK in the main action.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Lafayette Insurance Company issued policy number 85-211-489 to The Bryan Companies, Inc. and Bryan Construction Company, Inc., effective from June 28, 2000 through June 28, 2001.  Further, the named insureds under the commercial general liability coverage portion are The Bryan Companies, Inc., Bryan Construction Company, Inc., Bryan Contractors, LLC, and Bryan Homes, Inc.; and Cypress Lake Apartments is an

-1-

additional insured under the commercial general liability coverage portion.

In the copyright action, LRK alleges it is an architectural firm, in the business of creating a design known as "Island Park Apartments", for which it owns several copyrights. In its original complaint, LRK named as Defendants, Steve H. Bryan (hereinafter "Bryan"), Bryan Construction Company, Inc. (hereinafter "Bryan Construction"), Cypress Lake Development, L.L.C., CLA, L.L.C. (hereinafter "CLA"), Bryan Investments, L.L.C., and several other unrelated defendants.  For purposes of this motion, Lafayette will only refer to any defendant as it relates to activities of the Cypress Lake Apartment complex in Baton Rouge, Louisiana, as the other two allegedly infringing complexes (Island Park Apartments, in Shreveport, Louisiana and Grand Pointe Apartments in Lafayette, Louisiana) were permitted and constructed well beyond the Lafayette policy period ending on June 28, 2001.  Lafayette asserts that it is undisputed that none of the activities of the various defendants, as it relates to the Island Park Apartments, Shreveport and/or Grand Pointe Apartments, Lafayette, are covered under the Lafayette policy.

LRK claims under various allegations, and several amended petitions, that Bryan, Bryan Construction, and CLA have created and used non-pictorial depictions of LRK's copyrighted Island Park Apartments in promotional and advertising materials by publishing and using the "infringing" materials in the course of advertising the products and services in the operation of the Cypress Lake Apartments.  (See Paragraph 30 of LRK's First Amended Complaint, Doc. 65).  Also among LRK's claims are that the Cypress Lake Apartment structures themselves were used to advertise the apartment products and services.  (See Paragraph 30 of LRK's First Amended Complaint, Doc. 65).  As a result, LRK claims that the "infringing" advertising activities have resulted in rentals and leases of

the apartment units, resulting in damages to LRK.  (See Paragraph 30 of LRK's First Amended Complaint, Doc. 65).

The Lafayette Insurance Company policy issued herein is unique from any of the other Bryan defendants' insurers in that the Lafayette policy expired prior to the construction and promotional advertisement complained of by Looney Ricks Kiss Architects, Inc. for **any** of the alleged infringing complexes.

For reasons more fully described below, Lafayette Insurance Company shows that the commercial general liability policy issued to The Bryan Companies, Inc., Bryan Construction Company, Inc., Bryan Contractors, LLC, Bryan Homes, Inc., and Cypress Lake Apartments does not provide coverage, by its own terms and conditions, to any of the named defendants in the suit for specific acts and/or omissions complained of by Looney Ricks Kiss Architects, Inc.  Further, Lafayette incorporates by reference the arguments and Exhibits contained in its *Opposition of Lafayette Insurance Company to Motion for Partial Summary Judgment of Looney Ricks Kiss Architects, Inc.* (Doc. 208) as if submitted herein *in extenso*.  There are no factual allegations within the four corners of any of the complaints that would trigger coverage under the Lafayette policy.  Further, the plaintiff, Looney Ricks Kiss Architects, Inc., cannot show any set of facts which would trigger coverage under the Lafayette policy.

Accordingly, summary judgment should be granted in the favor of Lafayette, plaintiff in the declaratory judgment member action, pursuant to Rule 56, and judgment should issue in favor of Lafayette declaring there to be no coverage for the acts as alleged by Looney Ricks Kiss Architects, Inc. and no duty to defend any of the named and/or additional insureds under the Lafayette policy.

-3-

## TERMS OF THE LAFAYETTE POLICY

The following terms and conditions of the subject Lafayette policy are described in the Affidavit of Lafayette representative attached hereto as Exhibit "A", which certifies as true and correct a copy of the subject policy, which is attached to the affidavit as Attachment "1".  Lafayette Insurance Company issued policy number 85-211-489 to The Bryan Companies, Inc. and Bryan Construction Company, Inc., for the policy period June 28, 2000 to June 28, 2001.  The named insured under the commercial general liability coverage portion of the policy are The Bryan Companies, Inc., Bryan Construction Company, Inc., Bryan Contractors, LLC, and Bryan Homes, Inc.  Cypress Lake Apartments is an additional insured under the commercial general liability coverage portion of the Lafayette policy.  At issue herein is a commercial general liability coverage policy.

At page 1 of 13 under the "Commercial General Liability Form" under Section 1 - Coverages, the following "Insuring Agreement" appears:

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result....

b.      This insurance applies to "bodily injury" and "property damage" only if:

1.      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

-4-

> 2.    The "bodily injury" or "property damage" occurs during the policy period.

(See Exhibit "A", Attachment "1", p. 1).

The terms "occurrence", "bodily injury" and "property damage" are all defined in the policy.  Under the terms of the insuring agreement, coverage is afforded only for bodily injury or property damage that occurs as a result of an "occurrence".  "'Bodily injury' means 'bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.'" (See Exhibit "A", Attachment "1", p. 10).  "'Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (See Exhibit "A", Attachment "1", p. 12).  Further, "property damage" is defined as follows:

> A.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> B.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(See Exhibit "A", Attachment "1", p. 13).

## LAW AND ARGUMENT

Louisiana law is applicable on coverage and duty to defend, and the policy in question should be interpreted in accordance with Louisiana substantive law.  The insured's policy is a contract between the parties and should be construed under the general rules of contracts.  *Smith v. Matthews*, 611 So.2d 1377, 1379 (La. 1993).  The party's intent is reflected by the words in the policy and determines the extent of coverage.  Louisiana Civil Code Arts. 2045 and 1022.  Words and phrases should be construed using their plain,

ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *Louisiana Insurance Guaranty Association v. Interstate Fire and Casualty Company*, 630 So.2d 759 (La. 1994).

An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its policy provisions beyond that which is reasonably contemplated by its terms or so as to achieve an absurd result. *Louisiana Insurance Guaranty Association*, 630 So.2d at 763. Where the language of in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced, as written. *KLL Consultants, Inc. v. Aetna Casualty & Surety Company of Illinois*, 738 So.2d 691 (La. App. 5 Cir. 1999).

1.   **NO COVERAGE UNDER COVERAGE "A"
      FOR BODILY INJURY OR PROPERTY DAMAGE**

There is no coverage under the Coverage "A" section of the Lafayette policy for the type of injuries or damages complained of by LRK. The claims of LRK relate to an allegation of economic loss relative to intangible property, namely, rights which are attached to intellectual property. There are no allegations within the four corners of any of LRK's complaints that relate to "bodily injury" as that term is defined in the policy. There are no allegations that relate to sickness or disease suffered or sustained by a person or individual. Further, the alleged economic damage is to *intangible* not *tangible* property. The policy's definition of "property damage" means physical injury to tangible, not intangible property.

Further, the policy requires any such damage or injury to be the result of an "occurrence" in order to trigger coverage under the section relating to Coverage "A", bodily

-6-

injury and property damage liability.  The term "occurrence" is defined as being an accident. There are no allegations within the four corners of the complaints that relate to any accident.  All of the acts complained of are repeatedly referred to as being intentional in nature.

The term "occurrence" when defined in a policy of insurance as an "accident" has generally been interpreted to require a sudden or accidental event which gives rise to damage.  For example, in *Central Louisiana Electric Co., Inc. v. Westinghouse Electric Corporation*, 579 So.2d 981 (La. 1991), failure of metal blades in an industrial gas turbine was found not to be a result of an accident or single event but rather a prolonged period of forces in excess of the device's design tolerances.  Thus, damage to the turbine was not deemed to be an "occurrence" under the policy, which contained a definition of "occurrence" that was similar to the present policy language.

Words and phrases used in insurance policies are to be construed in their plain, ordinary, and popular sense.  *Muse v. Metropolitan Life Insurance Co.*, 192 So. 72; 193 (La. 1939).  The allegations of LRK's complaints involve deliberate conduct on the part of the defendants that occurred over extended periods of time.  The conduct described in the complaint does not meet the ordinary everyday definition of or one's reasonable understanding of an "accident".  In its most common use, the word "accident" is "an event occurring by chance or unintentionally".  Merriam-Webster Dictionary (10th ed. 1996).  This does not meet the circumstances as alleged in the complaint.

Further, copyrights have been repeatedly held by the Fifth Circuit and other courts to be "intangible" not "tangible" property.  *Chavez v. Arte Publico Press*, 139 F.3d 504 (5th Cir. 1998); *Tenneco, Inc. v. U.S.*, 433 F.2d 1345 (5th Cir. 1970); *Houston Chronicle*

-7-

*Publishing Co. v. U.S.*, 481 F.2d 1240 (5th Cir. 1973).

In this case, Lafayette's coverage defense is not based upon reliance upon an "exclusion" such as an "intentional acts" exclusion.   Lafayette submits the conduct complained of by LRK does not fall within the scope of the insuring agreement itself because the actions complained of do not amount to "occurrences" within that defined term under the policy.   The court must first analyze whether the allegations of the petition fall within the insuring agreement.   Then, only if they do fall within the scope of the insuring agreement does the court need to look at exclusions under the policy to determine whether no coverage exists.   Here, the allegations of LRK do not pass the first of those two tests. There is no coverage under the insuring agreement and it is not necessary for the court to analyze any exclusions under the policy.

For these reasons, Lafayette shows there is no coverage under Coverage "A" for bodily injury and property damage liability under the subject policy.

2.      **NO COVERAGE UNDER COVERAGE "B"**
        **FOR PERSONAL AND ADVERTISING INJURY LIABILITY**

There is only one other insuring agreement within the policy under which coverage could be afforded for the acts complained of by LRK, which also includes an exclusionary provision which will be addressed separately under Section 3 hereinbelow.   The Commercial General Liability Coverage Form contains Coverage "B" for "personal and advertising injury liability".   The policy provides the following:

> A.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies....

> B.      This insurance applies to "personal and advertising

injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(See Exhibit "A", Attachment "1", p. 5).  The terms "personal and advertising injury" and "advertisement" are defined terms under Section V of the policy.  The term "personal and advertising injury" is "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:...g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'."   (See Exhibit "A", Attachment "1", p. 12).   Further, "'advertisement' means a notice that is **broadcast or published** to the **general public or specific market segments** about your goods, products or services for the purpose of attracting customers or supporters."  (See Exhibit "A", Attachment "1", p. 10).

Lafayette submits that the conduct complained of by LRK does not fall within the scope of the insuring agreement itself because the actions complained of, even assuming a valid copyright in the "Island Park Apartments" Memphis by LRK as well as infringement for purposes of this motion only, did not and could not have occurred during the policy coverage period, namely June 28, 2000 to June 28, 2001.  Further, the actions complained of by LRK, which may fall within the coverage periods if deemed covered under the policy, did not cause damages to LRK.  LRK claims the damages arose from the rentals or leases of the Cypress Lake Apartment units, which occurred well beyond the policy period, June 28, 2000 to June 28, 2001, as only the permits were granted during the final month of the policy period and, further, as the complex was not certified complete until January 27, 2003, a year and one half following the end of the policy period.  (See Exhibit "B", Certificate of Substantial Completion).

LRK responded to certain discovery directed unto it that, based upon the documents produced, the following acts constituted "advertising" by the Bryan Defendants and CLA:

1)   An appraisal performed by Tom W. Cook, M.A.I., was "published to potential lenders, a specific market segment, including Union Planters Bank, for the purpose of attracting such lenders to support the Cypress Lake Apartment development.

2)   The site plans, which included depictions of apartment buildings which were derived from LRK's "Island park Apartments", were provided to Evans-Graves Engineers and Thomas Bobbitt, and then published to government agencies for support and approval to obtain the change in the land use classification.   Further, the approvals and site plan became public records intended for viewing by potential customers and supporters.

3)   Derivatives of the Island Park Apartments prepared by Steve Hill, Evans-Graves, Chuck Dammon, and Bobbitt were "published" within the Department of Public Works Inspection Disvision of the City of Baton Rouge and the Parish of East Baton Rouge, "whose support and approval were required for the issuance of building permits."   Additionally, the derivatives used to obtain the building permits were "intended for viewing by potential customers and supporters."

(See attached Exhibit "C").   In essence, LRK argues that the mere fact of proceeding to get the complex financed and constructed without ever having laid any foundation or having performed any "advertising" the apartments for lease or sale is covered under Lafayette's personal and advertising injury coverage.   As will be shown below, these actions by the defendants are not covered by the Lafayette policy.

Pursuant to the Lafayette policy to constitute a "personal and advertising injury", there must be a causal connection between the injury and the offense, if committed during the policy period.   Therefore, the damages or "injury" must "arise out of" the copyright

-10-

infringement in the advertisement.  This requires more than just advertising to be covered by the Lafayette policy.

Plaintiff's claimed damages arose from the rental or lease of the apartment units. (See Paragraph 30 of LRK's First Amended Complaint, Doc. 65). None of the allegations in the complaint nor evidence produced during discovery shows any such rentals or leases of the Cypress Lake Apartment units within the policy period, June 28, 2000 to June 28, 2001.  The construction of the Cypress Lake Apartments had not begun by June 28, 2001 (See attached Exhibit "D", Memorandum from Stephen G. Hill) and complex was not even substantially completed until January 27, 2003, when the Certificate of Substantial Completion was issued.  (See attached Exhibit "B").

Further, to constitute "advertisement" within the terms of the Lafayette policy, LRK must prove that the defendants (1) broadcast or published, (2) to the general public or specific market segment, (3) about defendant's good, products or services, and (4) for the purpose of attracting customers or supporters.  (See Exhibit "A", Attachment "1", p. 10). LRK cannot rely upon their conclusory statements to show that it can carry its burden of proof at trial.   LRK must show that the actions of the defendants constituted "advertisement" within the Lafayette policy, and within the policy period.

Mover will address, in turn, the three actions, upon which LRK relies, to show that LRK can prove no set of facts that there is coverage under the Lafayette policy for the actions of the defendants.

### a.   Appraisal by Tom W. Cook, M.A.I.

LRK alleges that the appraisal prepared by Tom W. Cook contained unauthorized copies of the Island Park Apartments Community design and was submitted to potential

lenders, including Union Planters Bank.  It cannot be disputed that Union Planters Bank or "lenders" are not the "general public".  Therefore, in order to constitute "advertisement", plaintiff must show that the appraisal prepared by Tom W. Cook was "broadcast or published" to a "specific market segment" about defendant's "goods, products or services".

The purpose of constructing the apartment complexes, including the Cypress Lake Apartments, by the various defendants is to sell to a third party.  (See attached Exhibit "E", deposition of Steve Bryan, p. 21:18-25).   This is exactly what happened in this case–Cypress Lake Apartments were sold to a third party, Protea.  (See Exhibit "E", p. 22:3-21).  Further, the market or consumer of the apartment product is a family or renter.  (See Exhibit "E", p. 39:22-25; 40:1-9).

An appraisal of the proposed complex, Cypress Lake Apartments, for example, is ordered by a bank prior to construction financing.  (See Exhibit "F", deposition of John King p. 29:24; 30:1).   This appraisal must be completed before the apartments can be constructed.  (Exhibit "F", p. 29:11-15).  It is impossible to get a construction loan from a bank without this appraisal.  (Exhibit "F", p. 30:2-6).  Accordingly, Union Planters Bank ordered the appraisal be performed by Tom Cook.  (See Exhibit "G", appraisal of Tom W. Cook, M.A.I.).

In *Salco Construction v. Simpson*, the Fifth Circuit was presented with the issue of whether "advertising" under a policy of insurance covered bid solicitations between a general contractor and subcontractor.  62 Fed.Appx. 557; 2003 WL 1202785 (C.A. 5 (La.) 2/27/03).[1]   Although that case was unreported, the Fifth Circuit found that the bid

---

[1]*Salco Construction, Inc. v. Simpson*, 62 Fed.Appx. 557; 2003 WL 1202785 (C.A. 5 (La.) 2/27/03), attached hereto and made a part hereof as Exhibit "H".

solicitations are not advertising of "goods, products or services". *Id.* Further, the Court held that the insurance policy contemplated coverage only for advertising directed to the "traditional consumers of a general contractor's products, goods and services"–real estate developers. *Id.*

In this case, the plaintiff claims that the defendant-contractor "advertised" within the terms and conditions of the policy when the lender's required appraisal was performed by Tom Cook. This is not advertisement in the traditional sense as was contemplated in the policy. The lender, namely Union Planters Bank, is neither a potential renter nor a real estate developer.

Further, the plaintiff must prove a causal connection between the injury and the offense. In this case, LRK does not allege that any damages arose from the appraisal that was performed by Tom Cook. In fact, the plaintiff's own complaint alleges that their damages arose from the rental or lease of the apartment units within the Cypress Lake Apartment complex. (See Paragraph 30 of LRK's First Amended Complaint, Doc. 65). LRK's alleged damages arose well beyond the Lafayette policy period which ended on June 28, 2001. Accordingly, the act of obtaining an appraisal is not covered under the policy.

**b.** **Change in Land Use Classification**

LRK alleges that the submission of various documents to "various persons in government agencies" for approval of the Cypress Lake Apartment development and change in the land use classification of October 30, 2000, which later became "public record" intended for viewing by potential customers and supporters. (See Exhibit "C", Answer to Interrogatory No. 2). Plaintiff must show that the documents submitted to the

-13-

various governmental agencies were "broadcast or published" to the "general public" or a "specific market segment" about defendant's "goods, products or services" for the "purpose of obtaining customers or supporters".

Even if this court accepts plaintiff's argument that the request for the change in land use classification is a broadcast or publication to the general public or specific market segment, plaintiff cannot show that the purpose of submitting the documents for a change in land use classification was for the purpose of obtaining customers or supporters.  As stated above, the traditional customer of a general contractor is a real estate developer.  *Salco*, supra.  The governmental agency to which the documents are produced are neither a renter nor a real estate developer.  Just as the appraisal was required to obtain lending, the change in land use classification was required to even begin contemplation of the construction of the complex.  (Exhibit "F", Deposition of John King, p. 52:3-17).  Without pointing to any particular evidence, the plaintiff merely asserts that the approval of the land use classification was intended for viewing by these "customers" or "supporters".  Accordingly, the act of requesting a change in land use classification cannot be viewed as having the purpose of attracting customers or supporters.

In the unreported case of *American Home Assurance Company v. The Selective Group, Inc.*, is illustrative of the same arguments being made by LRK in this case.  2006 WL 1691152 (Mich. App. 6/20/06).[2]  In that case, an architect sued for copyright infringement in condominium designs.  *Id.*  The defendants' insurer filed a declaratory judgment action seeking a declaration of no coverage and/or no duty to indemnify the

---

[2] *American Home Assurance Company v. The Selective Group, Inc.*, 2006 WL 1691152 (Mich. App. 6/20/06), attached hereto and made a part hereof as Exhibit "I".

-14-

defendants for the various acts of copyright infringement.  *Id.*  The insurance policy at issue

in that case contained an identical definition of "advertisement" as is contained in the

Lafayette policy.  *Id.* at 3.  The actions complained of by the various parties was that the

defendants' act of submitting filings to the township planning commission constituted

"advertisement" within the underlying policy.  *Id.*  The Michigan appeals court found that the

filings might constitute "notice" under the common meaning of the term; however, the

submissions were not "broadcast or published to the general public or specific market

segments" nor made "for the purpose of attracting customers or supporters."  *Id.*  Further,

in that case, even though the defendant claimed that the filings were submitted to "gain

approval and support from the local government authorities and the community of

prospective purchasers at large", the appeals court found that the defendants were

required to submit these filings to obtain approval for the zoning requirements.  *Id.* at 4.

This is not directed toward the public at large or to prospective purchasers.  *Id.*  There was

no evidence to the contrary that the general public or prospective purchasers were ever

actually provided the town filings.  *Id.*

As stated hereinabove, the plaintiff still must prove a causal connection between the

injury and the offense.  There is no allegation that LRK suffered any damages as a result

of defendants' actions in obtaining a change in land use classification.  In fact, the plaintiff's

own complaint alleges that their damages arose from the rental or lease of the apartment

units in the complex.  (See Paragraph 30 of LRK's First Amended Complaint, Doc. 65).

LRK's alleged damages arose well beyond the Lafayette policy period which ended on

June 28, 2001 and are wholly unrelated nor "causally connected" to defendants request for

a change in land use classification.  Accordingly, the act of defendants obtaining a change

in the land use classification is not covered under the personal and advertising injury provision in the Lafayette policy.

    **c.**    **Issuance of Building Permits**

For the same reasons, LRK's allegation that the act of submitting documents, even if infringing, to the Department of Public Works Inspection Division of the City of Baton Rouge and the Parish of East Baton Rouge is not advertising for purposes of Lafayette's personal and advertising injury. Again, the Department is not a real estate developer nor renter of the apartment unit. The traditional consumer of a general contractor's product is a real estate developer.

Similar to obtaining a land use classification change, prior to construction, a contractor must obtain the proper permits. Otherwise, the contractor cannot begin to lay the first foundation. The governmental agency to which the documents are provided are neither a renter nor a real estate developer ("prospective purchaser"). Without pointing to any particular evidence, LRK merely asserts that the "derivatives" used to obtain the building permits were intended for viewing by these "customers" or "supporters". These documents are provided to the Department of Public Works Inspection Division for the sole purpose of obtaining building permits. For the same reasons as was contained in the *American Home Assurance Company* case, the submission of documents to a governmental agency is not directed to the general public or real estate developers nor is there any evidence in this case that anyone was actually provided with the submissions. Accordingly, the act of submitting documents to the Department of Public Works Inspection Division cannot be viewed as having the purpose of attracting customers or supporters.

3.    **POLICY EXCLUSIONS**

Even if this Court finds that the actions of the defendants was a "personal and advertising injury" under the Lafayette policy, which Lafayette adamantly denies, the insuring agreement also contains a policy exclusion, which applies to the issue herein.  The Commercial General Liability Coverage Form contains Coverage "B" for "personal and advertising injury liability".  The policy also provides an exclusion, as follows:

> This insurance does not apply to:
>
> a.    "Personal and advertising injury":...
>
>     (6)    Arising out of a breach of contract, except an implied contract to use another's advertising in your "advertisement".

(See Exhibit "A", Attachment "1", p. 5).

Lafayette submits that the conduct complained of by LRK is a breach of the standard AIA contract which it executed with Steve Bryan, The Bryan Company, as owner of the Island Park Apartments in Memphis, Tennessee.  The standard AIA contract executed by The Bryan Company and Looney Ricks Kiss Architects, Inc. (hereinafter referred to as "Bryan Company-LRK Contract") October 10, 1996 provides the following:

> 6.1    The <u>Architectural Works,</u> Drawings, Specifications<u>,</u> <u>Technical Drawings</u> and other documents, prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project and, unless otherwise provided, the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including copyright.  The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's <u>Architectural Works,</u> Drawings, Specifications<u>, Technical Drawings</u> and other documents for information and reference in connection with the Owner's use and occupancy of the Project.

-17-

The Architect's <u>Architectural Works,</u> Drawings, Specifications<u>, Technical Drawings</u> or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

6.2     Submission or distribution of documents to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the Architect's reserved rights.

(See Exhibit "J", Standard Form of Agreement between The Bryan Company and Looney Ricks Kiss Architects, Inc.).

When the words of an agreement are clear and explicit and lead to no absurd result, then no further interpretation may be made of the parties' intent.  *Sport Tech, Inc. v. SFI Manufacturing, Inc.*, 838 So.2d 807 (La. App. 2 Cir. 12/20/02), citing La. C.C. Art. 2046. Here, the Bryan Company-LRK Contract outlines the agreement between the Owner, The Bryan Company, and the Architect, Looney Ricks Kiss Architects, Inc.  None of the standard language contained in the AIA form agreement concerning the "Use of Architect's Drawings, Specifications and Other Documents" is struck, and the only amendment is to broaden the scope of the Architect's rights to include the "Architectural Works and Technical Drawings".  Accordingly, the standard agreement is the entirety of the parties' agreement.  Further, the language of Bryan Company-LRK Contract is clear and explicit in that the Owner, The Bryan Company, may not use the LRK "Island Park Apartments" architectural works, drawings, specifications, technical drawings and other documents in other projects without the prior written agreement of LRK.

-18-

The injuries complained of by LRK arise out of the Bryan defendants unauthorized use of the "Island Park Apartments" in Memphis design for future projects, including the Cypress Lake Apartment project.   (See Paragraphs 30-31 of LRK's First Amended Complaint, Doc. 65).   This is the design which was the product of the aforementioned Bryan Company-LRK Contract.   Stephen Hill, the architect on the Cypress Lake Apartment complex, testified that he was given a full set of LRK drawings of the Island Park Apartments, Memphis, by the Bryan Company.   (See Exhibit "K", p. 19:7-19; 33:19-22). This set of drawings of the Island Park Apartments, Memphis was used as the basis for the Cypress Lake Apartments design.   (Exhibit "K", p. 33:9-18).

Although Steve Bryan may have interpreted his, or Becky Bryan's, involvement in the development of the Island Park Apartments, Memphis, with LRK as one of co-author, only one interpretation may be had of the Bryan Company-LRK Contract–the Bryan Company only had a limited license to use the LRK drawings for the particular project in Memphis.   The act of Steve Bryan providing those Island Park Apartment, Memphis, drawings to Stephen Hill which was used as the basis for the design of the Cypress Lake Apartment project is breach of the Bryan Company-LRK Contract.   This breach resulted in the alleged personal and advertising injury complained of by LRK.   Accordingly, even if a "personal and advertising injury" is found by the Court, which Lafayette denies, the actions of the defendants, in breach of Bryan Company-LRK Contract resulting in the alleged injury of LRK, are specifically excluded from coverage under the Lafayette policy.

## 4.   **NO DUTY TO DEFEND**

An insurer's duty to defend a lawsuit against an insured is broader than its liability for damage claims.   *Yount v. Maisano,* 627 So.2d 148 (La. 1993).   Assuming the

allegations of the petition are true, if there is both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured.  *Id.*  The "**eight-corners rule**" applies in determining whether an insurer owes its insured a duty of defense in a civil action. *Adams v. Frost*, 990 So.2d 751, 756 (La. App. 2 Cir. 8/20/08), citing *Vaughn v. Franklin*, 785 So.2d 79 (La. App. 1 Cir. 3/28/01).  This means that in determining whether a duty to defend exists, the court must look only to the "four-corners" of the plaintiff's petition and the "four-corners" of the insuring agreement.  *Id.*  The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy without consideration of extraneous evidence. *Bryan v. Motwani*, 683 So.2d 880 (La. App. 4th Cir. 1996).  If the possibility of liability under the policy is raised in the plaintiff's petition, then there is a duty to defend. *Yount*, 627 So.2d at 153. However, if the petition unambiguously excludes coverage, then there is no duty to defend.  *Id.*

As stated above, the term "personal and advertising injury", as it pertains to the Lafayette policy, is "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:...g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'."  (See Exhibit "A", Attachment "1", p. 12).  Accordingly, the damages or injury must "arise out of" the copyright infringement in the advertisement.  More than mere advertising of the product is required to trigger coverage.   Other courts have expressly found that a causal connection is required to trigger the duty to defend.  *Everest and Jennings, Inc. v. American Motorist Insurance Co.*, 23 F.3d 226, 229 (9th Cir. (Cal.) 4/13/94); *American Guarantee and Liability Insurance Co. v. 1906 Co.*, 129 F.3d 802 (5th Cir. (Miss.) 12/9/97), citing 12 COUCH ON INSURANCE § 45:56 at 146-147 (2d ed. 1981 & Supp. 1996).  Without such causal connection, there can be no coverage under the plain

-20-

language of the Lafayette policy and, therefore, no duty to defend.

Here, the plaintiff's petition unambiguously asserts that damages arose from the rentals and leases of "infringing apartment units", which arose from the Bryan defendants operation of the Cypress Lake Apartments and use of the structures themselves as advertisement.  (See Paragraph 30 of LRK's First Amended Complaint, Doc. 65).  Further, plaintiff's petition clearly asserts that it was not until the Cypress Lake Apartments were sold to CLA in December 2001 that the project was completed.  (See Paragraph 27 of LRK's First Amended Complaint, Doc. 65).  Accordingly, any of plaintiff's damages would have arisen from the rentals and leases of the "infringing apartment units" following December 2001 after the complex would have been completed.  This period falls well outside of the Lafayette policy period from June 28, 2000 to June 28, 2001.  (See Exhibit "A", Attachment "1", declarations page).

Considering the four corners of plaintiff's petition and the four corners of the Lafayette policy raise no possibility of coverage or liability to the plaintiff under the policy, then Lafayette has no duty to defend the various named or additional insureds.

## CONCLUSION

Lafayette Insurance Company shows that there is no genuine issue of material facts relative to the lack of coverage afforded by its policy issued to The Bryan Companies, Inc., Bryan Construction Company, Inc., Bryan Contractors, LLC, Bryan Homes, Inc., and Cypress Lake Apartments.  Further, any alleged acts of the defendants are specifically excluded from coverage under its policy.  Additionally, there is no genuine issue of material facts relative to a duty to defend The Bryan Companies, Inc., Bryan Construction Company, Inc., Bryan Contractors, LLC, Bryan Homes, Inc., and Cypress Lake Apartments.  There

-21-

are no facts or circumstances alleged in any of Looney Ricks Kiss Architects, Inc.'s complaints that would trigger coverage afforded by the Lafayette policy.  There being no genuine issue of material fact as to coverage or duty to defend, Lafayette's demands for a declaration of no coverage or duty to defend should be granted.

Respectfully submitted,

LUNN, IRION, SALLEY, CARLISLE & GARDNER
*A Professional Law Corporation*

P. O. Box 1534
Shreveport, LA  71165-1534
(318)222-0665 Telephone
318)220-3265 Facsimile

BY:_____s/LDL_____
           GERALD M. JOHNSON, JR.
           La. Bar Roll No. 16987
           LISA D. LOBRANO
           La. Bar Roll No. 29954
ATTORNEYS FOR LAFAYETTE INSURANCE
COMPANY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the *Memorandum in Support of Motion for Summary Judgment on Behalf of Lafayette Insurance Company* was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

Shreveport, Caddo Parish, Louisiana on this the 27th day of August, 2010.

_____s/LDL_____
OF COUNSEL

-22-