UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LOONEY RICKS KISS ARCHITECTS, INC. | CIVIL ACTION NO. 07-572 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STEVE H. BRYAN, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is a Motion for Partial Summary Judgment with Regard to Plaintiff's Ownership of Valid Copyrights (Record Document 173) filed by Plaintiff, Looney Ricks Kiss Architects, Inc. ("LRK"). LRK seeks a judicial determination that its copyright registrations for Island Park Apartments (VAu 432-994 and VAu 432-995) and South Bluffs Apartments (VAu 456-659, VAu 456-660, VAu 743-818 and Vau 743-819) are valid.[1] There are over sixty-five (65) defendants in this action. As such, the Court will refer to them collectively as "Defendants." This motion is opposed. For the reasons which follow, LRK's Motion for Partial Summary Judgment is **DENIED**.

**FACTUAL BACKGROUND**

This is an action for copyright infringement, including infringement of both architectural drawings and architectural works protected by the Architectural Works Copyright Protection Act of 1990. (Record Document 173-1 at 1). LRK alleges that it is the author of designs for two apartment complexes, known as the Island Park Apartments

---

[1] The briefs advanced by the parties focus on the originality of the Island Park Apartments materials. According to the Registration material attached to Record Document 173-3, the South Bluffs Apartments materials are derivative works of the Island Park Apartments materials. (Record Document 173-3 at Exhibits 5 and 6). Therefore, by calling the originality of the Island Parks materials into question, the originality of any derivative works (South Bluffs Apartments) are called into question.

and the South Bluffs Apartments, both originally constructed in Memphis, Tennessee. Id. According to Plaintiffs, Defendants have infringed LRK's copyrights in these designs by building and operating three apartment complexes in Baton Rouge, Shreveport and Lafayette, Louisiana based on LRK's designs. Id.

## PROCEDURAL BACKGROUND

On March 27, 2007, LRK filed the instant action against several defendants alleging copyright infringement. See Record Document 1. Through a subsequent Amended Complaint (Record Document 65) and Supplemental Complaint (Record Document 118), LRK greatly expanded the number of defendants who allegedly violated its copyrights. The defendants have consistently denied that they infringed on any copyrights. The instant motion for partial summary judgment was filed on May 8, 2009. See Record Document 173. On March 16, 2010, this motion was denied without prejudice for administrative purposes until evidence was "filed in the record that the bankruptcy stay had been lifted." (Record Document 249). On May 24, 2010, the instant motion was placed back on the docket.

## LAW AND ANALYSIS

**I.    Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56© mandates the entry

of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II.     Copyright Infringement.

For LRK to prevail on its claim of copyright infringement, it must show (1) ownership of a valid copyright and (2) unauthorized copying. See Peel & Co., Inc. v. The Rug Market, 238 F.3d 391, 394 (5th Cir. 2001). LRK has moved for summary judgment based on the first element, ownership of a valid copyright. The Defendants contend that LRK's works "include materials that lack both originality and copyrightability." (Record Document 216 at 6).

Copyright protection is available for original works of authorship in the following categories: (1) literary works; (2) musical works, including any accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and (8) architectural works. 17 U.S.C. § 102(a). An

architectural work is:

> the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101. Thus, copyright protection for an architectural work may encompass both architectural plans and constructed buildings. T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97, 109-10 (1st Cir.2006); Guillot-Vogt Assoc., Inc. v. Holly & Smith, 848 F.Supp. 682, 686-87 (E.D.La.1994).

### A. Ownership of a Valid Copyright.

"Ownership of a valid copyright is established by proving the originality and copyrightability of the material and compliance with the statutory formalities." Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1995) (internal citations omitted).[2] "Plaintiff bears the burden of proof on the *prima facie* case, and Defendant bears the burden as to defense." 3-12 Nimmer on Copyright § 12.11. Title 17 U.S.C. § 410(c) provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work *SHALL constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate*. The evidentiary weight to be accorded the certificate of a

---

[2]"Plaintiff's ownership . . . breaks down into the following constituent parts: (1) originality in the author; (2) copyrightability of the subject matter; (3) a national point of attachment of the work . . .; (4) compliance with applicable statutory formalities; and (5) (if plaintiff is not the author) a transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff as the valid copyright claimant." 4-13 Nimmer on Copyright § 13.01 (2007).

registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c) (emphasis added). While the certificates constitute *prima facie* evidence of the validity of the copyrights and of the facts stated in the certificates, the presumption is rebuttable. Norma Ribbon & Trimming, Inc., 51 F.3d at 47.

In this case, LRK has presented its certificates, stating that 1996 and 1997 were the "year[s] in which creation of work was completed" and that LRK's work had not been published. See Record Document 173-2, Exhibits 1-4. The Court must accept LRK's certificates as *prima facie* evidence of the validity of the copyrights, including originality, copyrightability, and compliance with statutory formalities. Further, the Court must also accept the certificates as *prima facie* evidence that LRK created the architectural works and technical drawings in 1996 and 1997 and had not published the works as of 1997 and 1999, both of which are facts contained in the certificates. The Court will now determine whether the Defendants have rebutted the Section 410(c) presumption.

### 1. Originality.

LRK's certificates are *prima facie* evidence for everything they contain, including the fact that it authored the designs for the two apartment complexes and the artistic renderings. Thus, the burden shifts to the Defendants to demonstrate that LRK copied from prior sources and was not original. See 3-12 Nimmer on Copyright § 12.1. If Defendants offer such proof, then the burden shifts to LRK to overcome that evidence. See id. However, it is not "sufficient for [Defendants] to offer evidence of prior similar works in the absence of evidence that [LRK actually] copied from such works." Id.

Originality "means only that the work was independently created by the author (as

opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345, 111 S.Ct. 1282, 1287 (1991). Courts have held that "the requisite level of creativity is extremely low; even a slight amount will suffice" and most works "make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Id. Most importantly, the Feist court distinguished originality and novelty:

> Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable.

Id. at 345-346, 111 S.Ct. 1287-1288.

To disprove originality, Defendants argue that "a portion of the plans used for the Island Park project were copies and/or derivative works based on preexisting works not authored by LRK." (Record Document 216 at 6).

A portion of LRK's works that are deposited with the United States Copyright Office are contained in Record Document 220-4, Exhibit 7. LRK's representatives have consistently testified that LRK independently created the architectural works at issue. In order to rebut the 401© presumption, "plaintiff is entitled to invoke the twin standards of access plus probative similarity. *Parallel logic indicated that defendants should be able to invoke the same standards in order to prove plaintiff's copying as a way of undermining her originality/and hence the other essential ingredient of plaintiff's own case*." 3-12 Nimmer on Copyright § 12.11[B][1][b][ii] (emphasis added). Accordingly, for the Defendants to rebut the *prima facie* presumption established by the copyright registrations, they must prove access and probative similarity. Defendants contend that LRK copied the Island

Park plans from a competing architectural firm, James, Harwick + Partners, Inc. ("JHP"). (Record Document 216 at 9). The record reveals that Paige Close ("Close"), the project manager of Island Park, worked on a project called Jefferson at Morgan Falls while working at JHP and brought copies of the plans with him. See Record Document 216-9. Defendants contend that Jefferson at Morgan Falls served as a template for the Island Parks Design. However, in Close's declaration, he was adamant that he never used elements from Jefferson stating, "LRK could not and did not use the Jefferson at Morgan Falls design as a starting point or source for the Island Park Apartments in Memphis." (Record Document 222 at 16). To support LRK's contention of originality, Jay Silverman, the project team leader on Island Park, testified in his deposition "I don't believe that I–or I don't recall copying anything from the J– the JHP drawings for Island Park." (Record Document 220-5 at 14). Silverman further clarified "the team would look at the drawings to say, see what a section from a different project per se looked like, but developed something for the project [Island Park]." Id. at 12. To further support LRK's position of originality, they hired an architect to review the Island Park and Jefferson plans. C. Stewart Slack, a registered local architect, provided a verified letter stating "the work of LRK to be reasonable and consistent with the work of other firms, consistent with industry standards, but unique in design." (Record Document 220-7 at 5).

     In opposition, the Defendants have come forward with competent summary judgment evidence that LRK copied its architectural works. Defendants provide the Affidavit of Clarence P. Babineaux, a registered architect, which states "based upon the similarities noted above and assuming that the architect who prepared the Island Park Memphis plans for LRK had access to the plans for Jefferson at Morgan Falls it is my

opinion that part of the Island Park Memphis plans were derived from part of the Jefferson at Morgan Falls and therefore the Island Park Memphis Plans were not entirely an original work of LRK." (Record Document 216-5 at 4-5). Babineaux's testimony attempts to establish that LRK copied from JHP's architectural works because the two are, in Babineaux's opinion, substantially similar. Such an inferential attack on originality appears to be permissible. See Boisson v. Banian, Ltd., 273 F.3d 262, 269-270 (2nd Cir. 2001)(noting that scholars disagree whether inferential proof of copying by the copyright holder is permissible and declining to decide the issue in view of the defendant's lack of evidence). Under the case law, the necessary access must have taken place prior to the time LRK created its architectural work. The Boisson court reasoned:

> Defendants also failed to show that [public domain works] similar to [Plaintiff's work] were so widely disseminated or known as to infer that Boisson reasonably would have seen one before designing her own works.

Boisson, 273 F.3d at 270. These contradictory statements in the form of competent summary judgment evidence presents a genuine issue of fact on the issue of probative similarity.

Based on the foregoing, this Court finds that Defendants have come forward with enough evidence to create a genuine fact issue with respect to originality.

### 2. Copyrightability.

Defendants also call into the question the copyrightability of some of the elements which make up LRK's copyright registration. They contend that LRK's architectural works lack "copyrightability because LRK did not author and does not own the copyrights in all constituent elements of the architectural works, technical drawings, and artwork associated with the Island Park and South Bluffs projects." (Record Document 216 at 6). The

Defendants point to the artists rendering on "[t]he first page of the materials deposited with the Copyright Office for the Island Park project." (Record Document 216 at 20). Upon review, "[t]he rendering is signed by 'Hamilton'". Id. at 20-21. Defendants contend that since no written agreement existed between Philip Hamilton ("Hamilton") and LRK at the time the rendering was done "Phil Hamilton is the owner of the copyrights to the Hamilton Rendering" and not LRK. Id. at 21.

Title 17 U.S.C. § 410(a) states that "[w]hen, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, *the material deposited constitutes copyrightable subject matter* and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration." 17 U.S.C. § 410(a) (emphasis added). Under Section 410(a), the Copyright Office conducts "a substantive examination within its particular expertise to determine validity: whether the work falls within the subject matter of copyright." 3-12 Nimmer on Copyright § 12.11. Further, the statute clearly states that a certificate will be issued only if the material deposited constitutes copyrightable subject matter. LRK was issued such a certificate. Thus, there is not only the Section 410(c) presumption in place, but also a strong indication that the Copyright Office determined that LRK's submissions were copyrightable subject matter.

This Court is guided by the analysis used by a fellow district court in this Circuit. See Compaq Computer Corp. v Ergonome Inc., 210 F. Supp. 2d 839, 842-844 (S.D. Tex. 2001). The Copyright Act provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible

expression entitled to copyright protection. Id. at § 102. See Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The Act carves out an important exception, however, for "works made for hire." If the work is for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary. See 17 U.S.C. § 201(b); Reid, 490 U.S. at 737, 109 S.Ct. 2166. Classifying a work as "made for hire" therefore determines, inter alia, the initial ownership of the copyright. See Reid, 490 U.S. at 737, 109 S.Ct. 2166; 1 Nimmer on Copyright § 5.03[A], pp. 5-10.

With regard to the validity of a work-for-hire agreement, the Copyright Act defines a "work made for hire" as "[a] work specially ordered or commissioned for use ... if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101(2). From this definition, Defendants argue that, a work-for-hire agreement, to be valid, must have been executed at the time of the creation of the copyrighted expression. If not, the actual creator of the work remains the true "author" who owns the copyright. In the instant case, the Defendants argue that if a valid work-for-hire agreement was not executed between LRK and Hamilton before the artists rendering was done, then Hamilton never relinquished ownership over the rendering to LRK. During the course of briefing this motion, Hamilton executed a "Memorandum of Work Made for Hire Agreement" with LRK which purports to convey full ownership in all of his previous drawings to LRK. See Record Document 220-8.

However, there is a conflicting line of cases over whether or not the work-for-hire agreement is effective for conferring owner status after the work is completed. The Seventh Circuit, in promoting a bright-line rule, has held that the parties must sign the

work-for-hire agreement before the copyrighted work is created in order for the work-for-hire agreement to be valid. See Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 413 (7th Cir.1992) ("The writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally.") In contrast, the Second Circuit has held that the written work-for-hire agreement may be executed after the copyrighted work is created. That court rejected the Seventh Circuit's view in *Schiller* and explained:

> We are not convinced, however, that the actual writing memorializing the agreement must be executed before the creation of the work. The Nimmers make a convincing argument in their treatise on copyrights that such a requirement could itself create uncertainty. They argue:
>
>> [O]ne can [ ] imagine claims involving parties each of whom knew of the unanimous intent among all concerned that the work for hire doctrine would apply, notwithstanding that some of the paperwork remained not fully executed until after creation of the subject work. In that [ ] circumstance, the bright line rule could frustrate the intent of the parties, and cloud rather than serve the goal of certainty.
>
> 1 Nimmer § 5.03[B][2][b] (1994). They conclude that "perhaps this rule needs further testing in the crucible of fact patterns by future cases." Id. We agree. In the fact pattern of this case, we will assume that the writing requirement of § 101(2) can be met by a writing executed after the work is created, if the writing confirms a prior agreement, either explicit or implicit, made before the creation of the work.

Playboy Enter., Inc. v. Dumas, 53 F.3d 549, 559 (2nd Cir.1995).

This Court accepts the Fifth Circuit's admonition that the Second Circuit is "the *de*

*facto* Copyright Court of the United States," Easter Seal Soc. for Crippled Children and Adults of Louisiana, Inc. v. Playboy Enter., 815 F.2d 323, 325 (5th Cir.1987). As such this Court also adopts the Second Circuit's approach and turns to the "Memorandum of Work for Hire Agreement" executed on October 5, 2009. (Record Document 220-8 at 3-6). From reading the document, it appears to conform with all of the requisite formalities: it has been executed by Phillip Hamilton (the copyright holder) and LRK (the employer); it communicates that at the time the drawing was created Hamilton understood that it was a work for hire ("Hamilton and LRK agreed, before the preparation of each of the Renderings, that LRK would be considered the author of such Renderings for purposes of copyright . . ."); and it meets the writing requirement of § 101(2). (Record Document 220-8).

This Court finds that LRK is the owner of the two dimensional artist rendering of Island Park. Therefore, the rendering is in fact copyrightable.[3]

Despite this finding of copyrightability, this Court cannot grant summary judgment because there is a genuine issue of material fact as it pertains to the issue of originality, more specifically whether or not LRK copied from JHP's architectural plans of Jefferson at Morgan Falls.

---

[3] While it appears that this Court could grant a partial Motion for Summary Judgment on the issue of copyrightability, it cannot because there is no proper motion on that issue before the Court. The motion before this Court is restricted to the issue of the validity of the copyright registrations.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion for Partial Summary Judgement (Record Document 173) filed by LRK seeking to establish they own valid copyrights.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 14th day of October, 2010.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE