UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LOONEY RICKS KISS ARCHITECTS, INC. | CIVIL ACTION NO. 07-572 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STEVE H. BRYAN, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before this Court is a Motion for Partial Summary Judgment declaring that complainant owes a duty of defense in connection with the matter styled: <u>Looney Ricks Kiss Architects, Inc. v. Steve H. Bryan et al.</u>, No. 5:07-cv-0572 [Record Document 204] filed on behalf of the Defendant, Looney Ricks Kiss Architects, Inc. ("LRK") and a Motion for Summary Judgment "declaring that there is no duty to defend or coverage for the main action," [Record Document 280] filed on behalf of the Plaintiff, Lafayette Insurance Co. ("Lafayette"). Both motions are opposed. For the reasons discussed herein, LRK's Motion for Partial Summary Judgment is **GRANTED** and Lafayette's Motion for Summary Judgment is **GRANTED**.

### FACTUAL BACKGROUND

LRK filed suit in this Court alleging copyright infringement against numerous defendants involved in the development, construction and operation of three apartment complexes which were based on LRK's design. [Record Document 204-2 at 1]. Lafayette Ins. Co. ("Lafayette") has filed a Complaint for Declaratory Judgment seeking " . . . a judgment declaring that its policy provides no coverage for the claims asserted by LOONEY RICKS and a judgment declaring LAFAYETTE to be relieved from a duty to defend the insureds in connection with the Original and First Amended Complaints of

LOONEY RICKS . . . ." [Complaint (5:09-cv-00471) at ¶17]. On July 2, 2009, this Court consolidated the present action with Civil Action No. 09-cv-0471. [Record Document 199].

In its motion for partial summary judgment, LRK asserts that Lafayette has a duty to defend this action. [Record Document 204]. In Lafayette's motion for summary judgment, it argues that it has no duty to defend and no duty to provide coverage. [Record Document 280].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56 requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated

assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

**Duty to Defend**

Generally, "[u]nder Louisiana law, 'the scope of the duty to defend under an insurance agreement is broader than the scope of the duty to provide coverage.'" Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 523 (5th Cir.2005) (quoting Suire v. Lafayette City-Parish Consol. Gov't, 907 So.2d 37, 51-52 (La.2005)); accord Graphia v. Schmitt, 7 So.3d 716, 718 (La.App. 5th Cir.2009) ("Generally, an insurer's obligation to defend suits against its insured is broader than its liability for damage claims."). Moreover, if a complaint contains a single claim for which a policy provides coverage, then the insurer is obligated to defend the entire lawsuit. Coleman, 418 F.3d at 523. In other words, "[t]he insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage." Elliott v. Cont'l Cas. Co., 949 So.2d 1247, 1250 (La.2007). The insurer's duty to defend arises if there is "even a possibility of liability under the policy." Id. Courts must liberally construe plaintiff's allegations to determine whether an insurer is obligated to provide a defense to its insured. See Graphia, 7 So.3d at 718. "The insurer's duty to defend is determined solely from the plaintiff's pleadings and the policy, without consideration of extraneous evidence." Selective Ins. Co. of S.E. v. J.B. Mouton & Sons, Inc., 954 F.2d 1075, 1078 (5th Cir. 1992).

However, in this instance after reviewing the complaints (Original, Amended and Supplemental), briefs and the insurance policy submitted in the record, this Court finds that it must first determine if LRK has standing to even invoke the duty to defend. This Court has reviewed the insurance contract at issue. [Record Document 204-3 at 2-37]. The parties have not presented this Court with any documents evidencing an assignment of rights[1] conferring insured status on LRK. While this Court will not make a determination of who is insured at this time, it will find as a matter of law that LRK is not an insured under Lafayette's insurance policy.

The Court acknowledges that the weight of cases that have addressed this issue of a third-party attempting to invoke an insurer's duty to defend counsels against finding standing.[2] However, this Court disagrees. First, this motion arises in the context of a declaratory judgment setting. The Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations *of any interested party seeking such declaration*, whether or not further relief is or could be sought. Any such

---

[1] According to Louisiana Civil Code Article 2642, "[a]ll rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor." LA. CIV. CODE art. 2642.

[2] 16 LEE R. RUSS & THOMAS F. SEGALLA, Couch on Insurance § 227:32 (3rd ed. 2000) ("In the cases of third-party attempts to determine the duty of tortfeasor's liability insurer to defend the underlying tort action have frequently been found to be improper on the ground that, in essence, the third party lacked the standing to raise the issue.")

> declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). LRK is an interested party to the litigation, by virtue of its position as a named defendant in the declaratory judgment action, and LRK is seeking to determine Lafayette's relationship to the main action.

Turning more specifically to Louisiana law, a strong case can be made for a finding that LRK has standing to invoke Lafayette's duty to defend the insureds. Using deductive logic, it becomes apparent that LRK can invoke the duty to defend. One must start from the premise that "the duty to defend is greater than [an insurers] duty to provide coverage." Becker v. Tidewater, Inc., 586 F.3d 358, 371 (5th Cir. 2009). For a proper declaratory judgment action in insurance, the third-party claimant must be made a party. The Fifth Circuit has held that "the appellants [the third-party claimants], as potential judgment creditors claiming liability in a state court tort action against the putative insured, have standing to appeal the judicial declaration that the policy of insurance issued by Dairyland does not cover the putative insured." Dairyland Ins. Co. v. Makover, 654 F.2d 1120, 1123 (5th Cir. 1981). Since the duty to defend is greater than the duty to provide coverage and the issue of coverage can likewise be invoked by a third-party, then it presupposes that the duty to defend can be invoked by a third-party. As such, LRK has standing to invoke Lafayette's duty to defend Lafayette's insureds.

Turning to the facts at hand, the Original Complaint and the First Amended Complaint state that "[i]n 2001, Cypress Lake Development and the Bryan defendants applied for and obtained permits to construct . . . 'Cypress lake Apartments.'" [Record Document 1 at ¶23 and Record Document 65 at ¶24]. The Original Complaint, First

Amended Complaint and Supplemental Complaint all allege that "Bryan, CLA and the . . . defendants have created and used non-pictorial depictions of LRK's Copyrighted Works in promotional and advertising material. Bryan, CLA and . . . defendants have published and used these infringing materials in the course of advertising their apartment products . . . ." [Record Document 1 at ¶31, Record Document 65 at ¶30 and Record Document 118 at ¶30].

The Lafayette insurance policy had an effective date from June 28, 2000 to June 28, 2001. [Record Document 204-4 at 2]. The policy provided Commercial General Liability ("CGL") coverage. Id. The policy stated that Lafayette agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." [Record Document 204-4 at 17].[3] The coverage section clarifies that "[t]his insurance applies to 'personal and advertising injury caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period." [Record Document 204-4 at 17]. The policy defined the following terms as such:

> 1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.
> . . .
> 4. "Coverage territory" means:
>    a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
> . . .

---

[3] The parties through briefing the motions appear to concede that no coverage exists under "Coverage A Bodily Injury and Property Damage Liability" and as such the Court's analysis will focus on "Coverage B Personal and Advertising Liability."

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> . . .
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

[Record Document 204-4 at 22-24].

Turning to the four corners of the petition and the four corners of the insurance policy, it appears to this Court that the alleged offense of infringing upon LRK's copyrights began during the coverage period (2001), within the coverage territory (Baton Rouge, Louisiana) and involved the advertising of the allegedly infringing depictions. These alleged facts implicate at least Lafayette's duty to defend. Lafayette attempts to invoke two unambiguous exclusions–breach of contract and an intentional act–to eliminate their duty to defend. However, the Original Complaint, First Amended Complaint and Supplemental Complaint do not allege that the violations were knowing or intentional. To determine the Defendant's intent as well as a possible breach of contract would take this Court beyond the "eight corners" of the petition and the policy. As such, Lafayette's argument must fail at this stage.

Accordingly, there are no genuine disputes of material fact regarding Lafayette's duty to defend. LRK's Motion for Partial Summary Judgment invoking Lafayette's duty to defend [Record Document 204] must be granted and Lafayette's Motion for Summary Judgment seeking a declaration of no duty to defend [Record Document 280] must be denied. To be clear, this Court finds that Lafayette has a duty to defend its insureds, whether it is invoked by LRK or by Lafayette. The eight corners rule clearly establishes a duty to defend on Lafayette's part.

**Duty to Provide Coverage**

Lafayette further seeks a declaration from this Court that there is no coverage under the aforementioned insurance policy issued by them. There appears to be no dispute among the parties that Louisiana law governs the interpretation of Lafayette's insurance policy. Under Louisiana law, general principles of contract interpretation apply to the interpretation of insurance policies and an insurance policy is the law between the parties. Succession of Fannaly v. Lafayette Ins. Co., 805 So.2d 1134, 1137 (La.2002). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV.CODE art.2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA CIV.CODE art.2050. In addition, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." LA. CIV.CODE art.2048.

The Lafayette insurance policy had an effective date from June 28, 2000 to June 28, 2001. [Record Document 204-4 at 2]. The policy provided Commercial General Liability coverage. Id. The policy stated that Lafayette agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." [Record Document 204-4 at 17].[4] The coverage section clarifies that "[t]his insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed

---

[4] The parties through briefing the motions appear to concede that no coverage exists under "Coverage A Bodily Injury and Property Damage Liability" and as such the Court's analysis will focus on "Coverage B Personal and Advertising Liability."

in the 'coverage territory' during the policy period." [Record Document 204-4 at 17]. The policy defined the following terms as such:

> 1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.
> . . .
> 4. "Coverage territory" means:
>    a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
> . . .
> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> . . .
>    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

[Record Document 204-4 at 22-24].

According to Steve Bryan:

> Having served as President of the Bryan Company during the Lafayette Insurance policy period in question, (June 28, 2000- June 28, 2001) and during the planning, development and construction of the Cypress Lake Apartment Development, I can state unequivocally that The Bryan Company initiated the promotion and advertisement of the Cypress Lake Apartment Development to the general public in the Baton Rouge, Louisiana area, in 2001, prior to obtaining the building permit for the Cypress Lake Apartment Development and prior to the end of the Lafayette Insurance Company policy period on June 28, 2001.

[Steve Bryan Affidavit, Record Document 296-1 at 3].

While this Court agrees that this statement may be self-serving, it is a verified document and thus constitutes competent summary judgment evidence which Lafayette

has failed to controvert. Therefore, a genuine dispute of material fact exists as to whether advertisements were made during the policy period.

Lafayette contends that even if this Court were to find coverage under Coverage B, a valid exclusion in the policy nonetheless bars coverage. In their Motion for Summary Judgment, Lafayette specifically raises for the first time the exclusion for a breach of contract:

> This insurance does not apply to:
> a. "Personal and advertising injury":
> . . .
> (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

[Record Documents 204-4 at 17 and 280-2 at 21].

Defendants argue that this exclusion is inapplicable since LRK has never asserted a breach of contract as a basis for relief. [Record Document 296 at 10]. Further, the Defendants contend "there is no basis in law or fact that would allow Lafayette to now assert this previously unrelied upon 'exclusion' to deny coverage and/or a duty to defend." [Record Document 296 at 10-11].

Turning to Lafayette's Complaint for Declaratory Judgment, it is true that Lafayette does not specifically invoke that exclusion. However, in the Complaint "LAFAYETTE specifically pleads the terms and conditions of the policy as though fully set forth herein." [Complaint for Declaratory Judgment at ¶6, Docket Number 09-0471]. Further, Lafayette sought "a judgment declaring that its policy provides no coverage for the claims asserted . . . ." [Complaint for Declaratory Judgment at ¶17, Docket Number 09-0471].

Federal Rule of Civil Procedure 8(a) provides, in relevant part, that:

> [a] pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no jurisdictional support; and
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED.R.CIV.P. 8(a). Under Rule 8(a)(2), a plaintiff's short and plain statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The federal courts have said repeatedly that pleadings are to be construed liberally . . . ." 5 CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1215 (3rd ed.)

As such, Lafayette plead, perhaps inartfully, the entire policy. Therefore, this Court will consider the applicability of this exclusion in determining if Lafayette has a duty to provide coverage.

On October 10, 1996, LRK and Steve Bryan entered into a Standard Form Agreement Between Owner and Architect ("Owner Architect Agreement").[5] The Owner Architect Agreement commissioned LRK to develop the plans for a multi-family apartment complex that became known as Island Park-Memphis. In Article 6.1 of that agreement, Steve Bryan specifically agreed that:

> The Architectural Works, Drawings, Specifications, Technical Drawings and other documents prepared by the Architect for

---

[5]The Standard Form Agreement Between Owner and Architect is a standard document drafted by the American Institute of Architects. This document is itself copyrighted by the American Institute of Architects.

> this Project are instruments of the Architect's service for use solely with respect to this Project and, unless otherwise provided, the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright. The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's <u>Architectural Works,</u> Drawings, Specifications, <u>Technical Drawings</u> and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's <u>Architectural Works,</u> Drawings, Specifications, <u>Technical Drawings</u> or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

[Record Document 280-14 at 9].

According to Article 9.1 of the Owner Architect Agreement between LRK and Steve Bryan, "[u]nless otherwise provided, this Agreement shall be governed by the law of the principal place of business of the Architect." [Record Document 280-14 at 11]. This appears to be a valid choice of law provision. The pleadings indicate that LRK's principal place of business at the time this contract was drafted and executed was Tennessee. As such, Tennessee law must govern the interpretation of this contract and its provisions.

Under Tennessee law, the language of the contract should be understood in its plain and ordinary meaning. See <u>American Ins. Reciprocal v. Hutchison</u>, 15 S.W.3d 811, 814 (Tenn.2000). "[A] contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists." <u>Farmers-Peoples Bank v. Clemmer</u>, 519 S.W.2d 801, 805 (Tenn.1975). A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions. <u>International</u>

Flight Ctr. v. City of Murfreesboro, 45 S.W.3d 565, 570 n. 5 (Tenn.Ct.App.2001). Nor is a contract rendered ambiguous simply by virtue of language which happens to be technical or complex to the layman. Blaylock and Brown Constr. v. AIU Ins. Co., 796 S.W.2d 146, 149 (Tenn.Ct.App.1990).

Interpretation of an unambiguous contract is a question of law for the court to decide. Hamblen County v. City of Morristown, 656 S.W.2d 331 (Tenn.1983). "Where a contract is clear and unambiguous, parties' intentions are to be determined from the four corners of the contract." Pierce v. Flynn, 656 S.W.2d 42 (Tenn.Ct.App.1983); Bokor v. Holder, 722 S.W.2d 676, 679 (Tenn.Ct.App.1986). However, even when the agreement is unambiguous, the court may "consider the situation of the parties and the accompanying circumstances at the time it was entered into-not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining" the contract's meaning. Hamblen, supra, 656 S.W.2d at 334 (quoting Restatement of Contracts § 235(d) and Comment).

This Court finds that pursuant to the unambiguous language of Article 6.1, Steve Bryan agreed that LRK would be the sole author of those plans and would "retain all common law, statutory and other reserved rights, including copyright." [Record Document 280-14 at 9]. Bryan cannot, under any circumstances, be considered a co-author.

From this Court's review of the competent summary judgment evidence, this Court concludes that Steve Bryan breached this contract. According to Stephen Hill, who was the architect of Cypress Lake Apartments, "[i]n the case of the Cypress Lake project The Bryan Company gave me a copy of the Island Park-Memphis documents to use as the basis for the design." [Stephen Hill Deposition 33:11-14]. Hill further explained that he was given "[a] full set of the architectural drawings" [Stephen Hill Deposition 33:21-22].

Stephen Hill further stated that he knew the documents were from LRK because they had "LRK's border seal on it with their name on it." [Stephen Hill Deposition 19:18-19]. In Steve Bryan's deposition when he was presented with the original agreement between himself and LRK, he stated that "I do not agree with the contract language."[6] [Steve Bryan Deposition 129:8]. He further explained under questioning:

> Q. Did you instruct anybody else who works in any of the companies affiliated with you to contact LRK to discuss this copyright issue?
> A. No.
> Q. Why not?
> A. Well, number one, we were co-author of the plans and so I did not believe that they would have the right to file copyrights on the plans."

[Steve Bryan Deposition 92:8-15]. He even admitted that he used the Island Park designs as the basis for Cypress Lake Apartments.

> Q. Did you seek the advice of counsel concerning whether or not you could be violating the copyright laws to use the Island Park-Memphis plans as a basis for Cypress Lake Apartments.
> A. There was no need to. The architect himself didn't tell me I couldn't use them when I told him exactly what my intentions were.

[Steve Bryan Deposition 145:20-25, 146:1-2].

> Q. When did you decide that you were going to use the Island Park-Memphis design as the basis for the Cypress Lake Apartments in Baton Rouge?
> A. Sometime in the development process in Baton Rouge.

[Steve Bryan Deposition 154:22-25, 155:1].

This uncontroverted evidence clearly demonstrates that Steve Bryan breached his contract with LRK and without LRK's consent, used the designs from Island Park-Memphis

---

[6]Bryan's answer confirms the Court's analysis that the language of Article 6.1 is clear and unambiguous.

as the basis for Cypress Lake Apartments. Upon this Court's initial review of the facts and applicable law, it was that initial breach of contract that has given rise to this very action.

On December 20, 2010, this Court held oral arguments to allow the parties a chance to argue the applicability of the breach of contract exclusion contained in Lafayette's insurance policy. During those arguments, counsel for LRK argued that this Court could not rely on principles of contract law to hold the exclusion applicable. They presented this Court with three cases from other jurisdictions holding that when copyright infringement is plead, federal law and not state contract law must govern the controversy. See McRoberts Software, Inc. v. Media 100, Inc., 2001 WL 1224727 (S.D. Ind. 2001), S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081 (9th Cir. 1989) and Marshall v. New Kids on the Block Partnership, 780 F.Supp. 1005 (S.D.N.Y. 1991).[7] This Court does not disagree with this premise. Theoretically, when LRK came to the steps of the courthouse, they had a choice to proceed under a breach of contract claim, a copyright infringement claim or both. They chose to pursue a copyright infringement claim and avail themselves of the statutorily created remedies.[8] That selection will govern the adjudication of the core action between LRK and the alleged infringers. However, the issue before the Court is not an attempt to undo LRK's selection to proceed under federal copyright laws. Instead, it is an action to adjudicate Lafayette's duty to provide coverage to its insured. A ruling on this matter in no way impairs LRK's rights and remedies under federal copyright law.

---

[7] Follwing oral arguments, the parties were allowed to supplement the record with additional briefing.

[8] LRK's choice to pursue a copyright infringement claim may not have been a true choice. In prior rulings, this Court has held that several possible causes of action under the Owner Architect Agreement are in fact time barred by the statute of limitations, but the Court has not ruled on whether a breach of contract claim pursued by LRK would be time barred.

The exclusion relied upon by Lafayette specifically states:

This insurance does not apply to:

    a.    "Personal and advertising injury":

. . .

        (6)    Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

[Record Documents 204-4 at 17 and 280-2 at 21]. This Court has reviewed the jurisprudence in Louisiana and has been unable to find any cases that interpret "arising out of" in the insurance context. However, there are a number of cases interpreting "arising out of" in contractual indemnity provisions. In cases interpreting contractual indemnity provisions employing "arising out of" language, Louisiana courts have applied a *but for* causation test. See Perkins v. Rubicon, Inc., 563 So.2d 258, 259-260 (La.1990); Dean v. Griffin Crane & Steel, Inc., 2005-1226 (La.App. 1 Cir. May 5, 2006), 935 So.2d 186. This Court finds contractual indemnity provisions to be closely analogous to insurance contract provisions and thus adopts the but for causation test, the most stringent causation standard.[9]

Lafayette provided coverage for "'personal and advertising injury' caused by an offense arising out of your business." [Record Document 204-4 at 17]. However, Lafayette's policy specifically states that it will not provide coverage for those advertising injuries that arise out of a breach of contract. This Court acknowledges and accepts the specialized statutory scheme for obtaining redress for copyright infringement. Yet,

---

[9]During oral arguments, the insurance companies provided this Court with a Fifth Circuit case interpreting "arising out of" under Texas State law. See Sport Supply Group, Inc. v. Columbia Casualty Co., 335 F.3d 453, 458 (5th Cir. 2003) ("Under Texas law, when an exclusion prevents coverage for injury 'arising out of' particular conduct, '[a] claim need only bear an *incidental relationship* to the described conduct for the exclusion to apply.'"). As stated earlier, Louisiana law governs Lafayette's insurance policy.

irrespective of LRK's choice to pursue that scheme, LRK's copyright infringement claim arises out of the Owner Architect Agreement between itself and Steve Bryan. While LRK's copyright infringement claim would exist without the Owner Architect Agreement by virtue of the statutorily created tort of copyright infringement *this* infringement claim derives exclusively from the Owner Architect Agreement. No evidence has been presented to this Court to suggest that LRK would have drafted, revised and developed the plans, technical drawings or renderings on its own. Indeed in this case, the LRK plans, etc. were developed because LRK contractually undertook the obligation to develop them. In this case, the copyright infringement is firmly rooted in the Owner Architect Agreement.

Without Article 6.1 of the Owner Architect Agreement, LRK could argue that their copyright infringement claim stands alone. However, such is not the case before the Court. Here, the copyright filing was specifically authorized by the Owner Architect Agreement giving LRK the right and authority to draft, develop and control the plans, drawings and renderings for Island Park-Memphis. The Owner Architect Agreement between LRK and Steve Bryan is the fountainhead for this entire action. The plans would not have been created, copyrights filed, and used for three other apartment complexes had not the Owner Architect Agreement been signed. Therefore, this Court finds as a matter of law that the advertising injuries alleged by LRK would not have occurred but for a breach of the Owner

Architect Agreement.[10]  Since the Lafayette policy unambiguously excludes coverage for injuries arising from a breach of contract, Lafayette has no duty to provide coverage.

**Injunctive Relief**

During oral arguments, LRK conceded that it was no longer asserting advertising injury during the coverage period of Lafayette's insurance policy.  Counsel for the Bryan Defendants argued that regardless of LRK's changed position, Lafayette should be forced to provide coverage if the court finds an occurrence that gave rise to damages took place during the coverage period and issues an injunction.  The Court need not reach this novel argument since the Court has found a valid exclusion to coverage.

**Steve Bryan's Personal Actions**

Further, during oral arguments, counsel for the Bryan Defendants argued that Steve Bryan's personal actions should not be imputed to them because of corporate formalities.  These arguments must fail.  Steve Bryan was an owner/manager of all of the named insureds and additional insureds.  His actions permeate all of the business entities named as defendants.

Accordingly there are no disputes of material fact remaining and summary judgment is appropriate and Lafayette is entitled to a Declaratory Judgment stating that their policy provides no coverage for this action.

---

[10]During oral arguments counsel for LRK cautioned this Court that upholding this exclusion would possibly invalidate every insurance policy that had this exclusion if an insurer could find a contract that were breached.  This Court disagrees.  Given the high standard that insurers must reach to satisfy "but for causation" it seems unlikely that the parade of horribles suggested by counsel will come to pass.  Moreover, the facts and circumstances of this case present unique legal questions that simply will not arise in most litigation.

## CONCLUSION[11]

The Court finds there are no genuine disputes of material fact as to the Issue of Lafayette Ins. Co.'s duty to defend and no disputes of material fact as to the Issue of Lafayette's duty to provide coverage.

Accordingly,

**IT IS ORDERED** that LRK's Motion for Partial Summary Judgment on the Issue of Lafayette Ins. Co.'s duty to defend [Record Document 204] be and is hereby **GRANTED**.

**FURTHER IT IS ORDERED** that Lafayette's Motion for Summary Judgment seeking a Declaratory Judgment of no duty to provide coverage [Record Document 280] is **GRANTED**.

An Order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 30th day of December, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[11] Also before this Court is a Motion to Dismiss "Lafayette Insurance Company's Complaint for Declaratory Judgment as filed against all defendants named herein who are not/were not 'insureds' under the Policy." [Record Document 236 at 4]. As is the practice, any motion that may be pending relating to this matter [Lafayette's Declaratory Judgment Action] is hereby denied as moot.