UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LOONEY RICKS KISS ARCHITECTS, INC. | CIVIL ACTION NO. 07-572 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STEVE H. BRYAN, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before this Court is a Motion for Partial Summary Judgment seeking a finding of "no coverage for and no duty to defend CLA, LLC under its apartment policies or its umbrella policies" filed by Defendant, State Farm Fire & Casualty Company ("State Farm"). [Record Document 291 at 6]. The motion is opposed. For the reasons discussed herein, State Farm's Motion for Partial Summary Judgment is **DENIED IN PART** and **GRANTED IN PART**.

### FACTUAL BACKGROUND

Looney Ricks Kiss Architects, Inc. ("LRK") filed suit in this Court alleging copyright infringement against numerous defendants involved in the development, construction and operation of three apartment complexes which were based on LRK's design. State Farm provided three "Apartment Policies" and three "Umbrella Policies" to one of the allegedly infringing apartment complexes–Cypress Lake Apartments.

In its motion for partial summary judgment, State Farm argues that it has no duty to defend this action. [Record Document 291]. In addition, State Farm argues that it has no duty to provide coverage. [Record Document 291].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

**LAW AND ANALYSIS**

**Duty to Defend**

Generally, "[u]nder Louisiana law, 'the scope of the duty to defend under an insurance agreement is broader than the scope of the duty to provide coverage.'" Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 523 (5th Cir.2005) (quoting Suire v. Lafayette City-Parish Consol. Gov't, 907 So.2d 37, 51-52 (La.2005)); accord Graphia v. Schmitt, 7 So.3d 716, 718 (La.App. 5th Cir.2009) ("Generally, an insurer's obligation to defend suits against its insured is broader than its liability for damage claims."). Moreover, if a complaint contains a single claim for which a policy provides coverage, then the insurer is obligated to defend the entire lawsuit. Coleman, 418 F.3d at 523. In other words, "[t]he insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage." Elliott v. Cont'l Cas. Co., 949 So.2d 1247, 1250 (La.2007). The insurer's duty to defend arises if there is "even a possibility of liability under the policy." Id. Courts must liberally construe plaintiff's allegations to determine whether an insurer is obligated to provide a defense to its insured. See Graphia, 7 So.3d at 718. "The insurer's duty to defend is determined solely from the plaintiff's pleadings and the policy, without consideration of extraneous evidence." Selective Ins. Co. of S.E. v. J.B. Mouton & Sons, Inc., 954 F.2d 1075, 1078 (5th Cir. 1992).

Turning to the facts at hand, the Original Complaint and the First Amended Complaint state that "[i]n 2001, Cypress Lake Development and the Bryan defendants applied for and obtained permits to construct . . . 'Cypress lake Apartments.'" [Record Document 1 at ¶23 and Record Document 65 at ¶24]. The Original Complaint, First

Amended Complaint and Supplemental Complaint all allege that "Bryan, CLA and the . . . defendants have created and used non-pictorial depictions of LRK's Copyrighted Works in promotional and advertising material. Bryan, CLA and . . . defendants have published and used these infringing materials in the course of advertising their apartment products . . . ." [Record Document 1 at ¶31, Record Document 65 at ¶30 and Record Document 118 at ¶30].

State Farm issued three "Apartment Policies" to CLA, LLC (dba Cypress Lake Apartments) with effective dates of coverage from June 28, 2002 to June 28, 2005. See Record Document 291–SF-1, SF-2 and SF-3. According to "Section II Comprehensive Business Liability" State Farm agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which this insurance applies." [Id. at SF-1 at 20, SF-2 at 20 and SF-3 at 20].[1] The policies further clarify:

> This insurance applies only:
> . . .
> 3. to **advertising injury** caused by an **occurrence** committed in the coverage territory during the policy period. The **occurrence** must be committed in the course of advertising your goods, products or services.

[Id. at SF-1 at 20, SF-2 at 20 and SF-3 at 20]. The policy defined the following terms as such:

> 1. **advertising injury** means injury arising out of one or more of the following offenses:
>     a. oral or written publication of material that slanders or libels a person or organization or

---

[1] The parties through briefing the motions appear to concede that the only coverage issue pertains to "advertising injury."

                                    disparages a person's or organization's goods, products or services;
                b.    oral or written publication of material that violates a person's right of privacy;
                c.    misappropriation of advertising ideas or style of doing business; or
                d.    infringement of copyright, title or slogan;
. . .
4.    **coverage territory** means:
        a.    the United States of America (including its territories and possessions), Puerto Rico and Canada;
. . .
11.    **occurrence** means:
        a.    an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**; or
        b.    the commission of an offense, or a series of similar or related offenses, which results in **personal injury** or **advertising injury**. . . .

[Id. at SF-1 at 29-32, SF-2 at 29-32, and SF-3 at 29-32].

In addition to the "Apartment Policies", State Farm issued three "Commercial Liability Umbrella" policies to CLA, LLC (dba Cypress Lake Apartments), with effective dates of coverage from September 2002 to September 2005. See id. at SF-4, SF-5 and SF-6.

According to the Comprehensive Business Liability language of this umbrella policy:

> If you are legally obligated to pay damages for:
> 1.    **bodily injury**;
> 2.    **personal injury**;
> 3.    **property damage**; or
> 4.    **advertising injury**,
> to which this insurance applies, we will pay your **net loss** minus the **retained limit**.
> . . .
> This insurance applies only:
> . . .
> 3.    to **advertising injury** caused by an **occurrence** committed in the coverage territory during the policy period.

> The **occurrence** must be committed in the course of advertising your goods, products or services.

[Id. at SF- 4 at 1, SF-5 at 1, and SF-6 at 1]. The umbrella policies define the following terms as:

> 1. **advertising injury** means injury arising out of one or more of the following offenses:
>    a. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>    b. oral or written publication of material that violates a person's right of privacy;
>    c. misappropriation of advertising ideas or style of doing business; or
>    d. infringement of copyright, title or slogan;
> . . .
> 5. **coverage territory** mean anywhere in the world;
> . . .
> 10. **occurrence** means:
>     a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**; or
>     b. the commission of an offense, or a series of similar or related offenses, which results in **personal injury** or **advertising injury**. . . .

[Id. at SF-4 at 11-12, SF-5 at 11-2, and SF-6 at 11-12].

Turning to the four corners of the petition and the four corners of the insurance policies, it appears to this Court that the alleged offense of infringing upon LRK's copyrights continued through the coverage period (2002-2005), within the coverage territory (Baton Rouge, Louisiana) and involved the advertising of the allegedly infringing depictions. These alleged facts implicate at least State Farm's duty to defend. State Farm attempts to invoke two unambiguous exclusions–breach of contract and a willful violation of a penal statute–to eliminate their duty to defend. However, the Original Complaint, First

Amended Complaint and Supplemental Complaint do not allege that the violations were knowing or intentional. To determine the Defendant's intent as well as a possible breach of contract would take this Court beyond the "eight corners" of the petition and the policy. As such, State Farm's argument fails at this stage.

Accordingly, there are no genuine disputes of material fact regarding State Farm's duty to defend. State Farm's Motion for Partial Summary Judgment seeking a declaration of no duty to defend [Record Document 291] must be denied.

**Duty to Provide Coverage**

State Farm further seeks a declaration from this Court that there is no coverage under the aforementioned insurance policies issued by them. There appears to be no dispute among the parties that Louisiana law governs the interpretation of State Farm's insurance policies. Under Louisiana law, general principles of contract interpretation apply to the interpretation of insurance policies and an insurance policy is the law between the parties. Succession of Fannaly v. State Farm Ins. Co., 805 So.2d 1134, 1137 (La.2002). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV.CODE art.2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA CIV.CODE art.2050. In addition, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." LA. CIV.CODE art.2048.

State Farm issued three "Apartment Policies" to CLA, LLC (dba Cypress Lake Apartments) and these policies provided coverage from June 28, 2002 to June 28, 2005.

<u>See</u> Record Document 291–SF-1, SF-2 and SF-3. According to "Section II Comprehensive Business Liability" State Farm agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which this insurance applies." [<u>Id.</u> at SF-1 at 20, SF-2 at 20 and SF-3 at 20].[2]  The policies further clarify:

> This insurance applies only:
> . . .
> 3.    to **advertising injury** caused by an **occurrence** committed in the coverage territory during the policy period.  The **occurrence** must be committed in the course of advertising your goods, products or services.

[<u>Id.</u> at SF-1 at 20, SF-2 at 20 and SF-3 at 20].  The policy defined the following terms as such:

> 1.    **advertising injury** means injury arising out of one or more of the following offenses:
>     a.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>     b.    oral or written publication of material that violates a person's right of privacy;
>     c.    misappropriation of advertising ideas or style of doing business; or
>     d.    infringement of copyright, title or slogan;
> . . .
> 4.    **coverage territory** means:
>     a.    the United States of America (including its territories and possessions), Puerto Rico and Canada;
> . . .
> 11.    **occurrence** means:
>     a.    an accident, including continuous or repeated exposure to substantially the same general

---

[2] The parties through briefing the motions appear to concede that the only coverage issue pertains to "advertising injury."

> harmful conditions which result in **bodily injury** or **property damage**; or
> b.   the commission of an offense, or a series of similar or related offenses, which results in **personal injury** or **advertising injury**. . . .

[Id. at SF-1 at 29-32, SF-2 at 29-32, and SF-3 at 29-32].

In addition to the "Apartment Policies", State Farm issued three "Commercial Liability Umbrella" Policies to CLA, LLC (dba Cypress Lake Apartments), with effective dates of coverage from September 2002 to September 2005. See id. at SF-4, SF-5 and SF-6.

According to the Comprehensive Business Liability language of these three umbrella policies:

> If you are legally obligated to pay damages for:
> 1.   **bodily injury**;
> 2.   **personal injury**;
> 3.   **property damage**; or
> 4.   **advertising injury**,
> to which this insurance applies, we will pay your **net loss** minus the **retained limit**.
> . . .
> This insurance applies only:
> . . .
> 3.   to **advertising injury** caused by an **occurrence** committed in the coverage territory during the policy period. The **occurrence** must be committed in the course of advertising your goods, products or services.

[Id. at SF-4 at 1, SF-5 at 1, and SF-6 at 1]. The umbrella policies define the following terms as:

> 1.   **advertising injury** means injury arising out of one or more of the following offenses:
>    a.   oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      b.    oral or written publication of material that violates a person's right of privacy;
      c.    misappropriation of advertising ideas or style of doing business; or
      d.    infringement of copyright, title or slogan;

. . .

5.    **coverage territory** mean anywhere in the world;

. . .

10.    **occurrence** means:
      a.    an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**; or
      b.    the commission of an offense, or a series of similar or related offenses, which results in **personal injury** or **advertising injury**. . . .

[Id. at SF-4 at 11-12, SF-5 at 11-12, and SF-6 at 11-12].

According to Steve Bryan:

> Having served as President of the Bryan Company during the State Farm Insurance policy periods here in question, (June 28, 2002-June 28, 2005) and during the planning, development and construction of the Cypress Lake Apartment Development, I can state unequivocally that The Bryan Company initiated and continued the promotion and advertisement of the Cypress Lake Apartment Development to the general public in the Baton Rouge, Louisiana area, during 2002, 2003, 2004 & 2005, both during and after construction of the Cypress Lake Apartment Development and prior to the end of the State Farm policy periods of June 28, 2002 through June 28, 2005.

[Steve Bryan Affidavit, Record Document 346-1 at 3].

While this Court agrees that this statement may be self-serving, it is a verified document and thus constitutes competent summary judgment evidence which State Farm has failed to controvert. Therefore, a genuine dispute of material fact exists as to whether advertisements were made during the policy periods.

State Farm contends that even if this Court were to find coverage, a valid exclusion in the policy nonetheless bars coverage. In their Motion for Summary Judgment, State Farm specifically raises the exclusion for a breach of contract that is contained in the "apartment policies" and the umbrella policies:

> Under Coverage L, this insurance does not apply:
> . . .
> 17.  to **advertising injury** arising out of:
>   a.  breach of contract other than misappropriation of advertising ideas under an implied contract; . . . .

[Record Document 291 at SF-1 at 24, SF-2 at 24, and SF-3 at 24].

> Under Coverage L-Business Liability, this insurance does not apply:
> . . .
> 19.  to **advertising injury** arising out of:
>   a.  breach of contract other than misappropriation of advertising ideas under an implied contract; . . . .

[Id. at SF-4 at 4, SF-5 at 4, and SF-6 at 4].

To support their contention that this matter is excluded because it arose from a breach of contract, State Farm presents this Court with the original agreement between LRK and Steve Bryan to build Island Park-Memphis. On October 10, 1996, LRK and Steve Bryan entered into a Standard Form Agreement Between Owner and Architect ("Owner Architect Agreement").[3] The Owner Architect Agreement commissioned LRK to develop the plans for a multi-family apartment complex that became known as Island Park-Memphis. In Article 6.1 of that agreement, Steve Bryan specifically agreed that:

> The <u>Architectural Works,</u> Drawings, Specifications, <u>Technical Drawings</u> and other documents prepared by the Architect for this Project are instruments of the Architect's service for use

---

[3] The Standard Form Agreement Between Owner and Architect is a standard document drafted by the American Institute of Architects. This document is itself copyrighted by the American Institute of Architects.

> solely with respect to this Project and, unless otherwise provided, the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright.  The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's <u>Architectural Works,</u> Drawings, Specifications, <u>Technical Drawings</u> and other documents for information and reference in connection with the Owner's use and occupancy of the Project.  The Architect's <u>Architectural Works,</u> Drawings, Specifications, <u>Technical Drawings</u> or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

[Record Document 386-2 at 12].

According to Article 9.1 of the Owner Architect Agreement between LRK and Steve Bryan, "[u]nless otherwise provided, this Agreement shall be governed by the law of the principal place of business of the Architect." [Record Document 386-2 at 14].  This appears to be a valid choice of law provision.  The pleadings indicate that LRK's principal place of business at the time this contract was drafted and executed was Tennessee.  As such, Tennessee law must govern the interpretation of this contract and its provisions.

Under Tennessee law, the language of the contract should be understood in its plain and ordinary meaning. <u>See</u> <u>American Ins. Reciprocal v. Hutchison</u>, 15 S.W.3d 811, 814 (Tenn.2000). "[A] contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists." <u>Farmers-Peoples Bank v. Clemmer</u>, 519 S.W.2d 801, 805 (Tenn.1975). A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions. <u>International Flight Ctr. v. City of Murfreesboro</u>, 45 S.W.3d 565, 570 n. 5 (Tenn.Ct.App.2001). Nor is a

contract rendered ambiguous simply by virtue of language which happens to be technical or complex to the layman. Blaylock and Brown Constr. v. AIU Ins. Co., 796 S.W.2d 146, 149 (Tenn.Ct.App.1990).

Interpretation of an unambiguous contract is a question of law for the court to decide. Hamblen County v. City of Morristown, 656 S.W.2d 331 (Tenn.1983). "Where a contract is clear and unambiguous, parties' intentions are to be determined from the four corners of the contract." Pierce v. Flynn, 656 S.W.2d 42 (Tenn.Ct.App.1983); Bokor v. Holder, 722 S.W.2d 676, 679 (Tenn.Ct.App.1986). However, even when the agreement is unambiguous, the court may "consider the situation of the parties and the accompanying circumstances at the time it was entered into-not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining" the contract's meaning. Hamblen, supra, 656 S.W.2d at 334 (quoting Restatement of Contracts § 235(d) and Comment).

This Court finds that pursuant to the unambiguous language of Article 6.1, Steve Bryan agreed that LRK would be the sole author of those plans and would "retain all common law, statutory and other reserved rights, including copyright." [Record Document 386-2 at 12]. Bryan cannot, under any circumstances, be considered a co-author.

From this Court's review of the competent summary judgment evidence, this Court concludes that Steve Bryan breached this contract. According to Stephen Hill, who was the architect of Cypress Lake Apartments, "[i]n the case of the Cypress Lake project The Bryan Company gave me a copy of the Island Park-Memphis documents to use as the basis for the design." [Stephen Hill Deposition 33:11-14]. Hill further explained that he was given "[a] full set of the architectural drawings" [Stephen Hill Deposition 33:21-22]. Stephen Hill further stated that he knew the documents were from LRK because they had

"LRK's border seal on it with their name on it." (Stephen Hill Deposition 19:18-19). In Steve Bryan's deposition, Mr. Bryan explained his understanding of the copyright issues:

> Q. Did you instruct anybody else who works in any of the companies affiliated with you to contact LRK to discuss this copyright issue?
> A. No.
> Q. Why not?
> A. Well, number one, we were co-author of the plans and so I did not believe that they would have the right to file copyrights on the plans.

[Steve Bryan Deposition 92:8-15]. He even admitted that he used the Island Park designs as the basis for Cypress Lake Apartments.

> A. I don't believe so. You know, I was also never told that there was a copyright on the plans, and I was never told that I couldn't use the plans with my request, so I felt it was proper and okay for me to use the plans.

[Steve Bryan Deposition 144:21-25].

This uncontroverted evidence demonstrates that Steve Bryan breached his contract with LRK and without LRK's consent used the designs from Island Park-Memphis as the basis for Cypress Lake Apartments. Upon this Courts' initial review of the facts and applicable law, it was that initial breach of contract that has given rise to this very action.

On December 20, 2010, this Court held oral arguments to allow the parties a chance to argue the applicability of the breach of contract exclusion contained in State Farm's insurance policies. During those arguments, counsel for LRK argued that this Court could not rely on principles of contract law to hold the exclusion applicable. They presented this Court with three cases from other jurisdictions holding that when copyright infringement is plead, federal law and not state contract law must govern the controversy. See McRoberts Software, Inc. v. Media 100, Inc., 2001 WL 1224727 (S.D. Ind. 2001), S.O.S., Inc. v.

Payday, Inc., 886 F.2d 1081 (9th Cir. 1989) and Marshall v. New Kids on the Block Partnership, 780 F.Supp. 1005 (S.D.N.Y. 1991).[4] This Court does not disagree with this premise. Theoretically, when LRK came to the steps of the courthouse, they had a choice to proceed under a breach of contract claim, a copyright infringement claim or both. They chose to pursue a copyright infringement claim and avail themselves of the statutorily created remedies.[5] That selection will govern the adjudication of the core action between LRK and the alleged infringers. However, the issue before the Court is not an attempt to undo LRK's selection to proceed under federal copyright laws. Instead, it is an action to adjudicate State Farm's duty to provide coverage to its insured. A ruling on this matter in no way impairs LRK's rights and remedies under federal copyright law.

The exclusion relied upon by State Farm specifically states:

Under Coverage L, this insurance does not apply:
. . .
17.  to **advertising injury** arising out of:
     a.   breach of contract other than misappropriation of advertising ideas under an implied contract; . . . .

[Record Document 291 at SF-1 at 24, SF-2 at 24, and SF-3 at 24].

Under Coverage L-Business Liability, this insurance does not apply:
. . .
19.  to **advertising injury** arising out of:
     a.   breach of contract other than misappropriation of advertising ideas under an implied contract; . . . .

---

[4] Follwing oral arguments, the parties were allowed to supplement the record with additional briefing.

[5] LRK's choice to pursue a copyright infringement claim may not have been a true choice. In prior rulings, this Court has held that several possible causes of action under the Owner Architect Agreement are in fact time barred by the statute of limitations, but the Court has not ruled on whether a breach of contract claim pursued by LRK would be time barred.

[Id. at SF-4 at 4, SF-5 at 4, and SF-6 at 4]. This Court has reviewed the jurisprudence in Louisiana and has been unable to find any cases that interpret "arising out of" in the insurance context. However, there are a number of cases interpreting "arising out of" in contractual indemnity provisions. In cases interpreting contractual indemnity provisions employing "arising out of" language, Louisiana courts have applied a *but for* causation test. See Perkins v. Rubicon, Inc., 563 So.2d 258, 259 -260 (La.1990); Dean v. Griffin Crane & Steel, Inc., 2005-1226 (La.App. 1 Cir. May 5, 2006), 935 So.2d 186. This Court finds contractual indemnity provisions to be closely analogous to insurance contract provisions and thus adopts the but for causation test, the most stringent causation standard.[6]

      State Farm provided coverage for personal and advertising injury. However, State Farm's policies specifically state that they will not provide coverage for those advertising injuries that arise out of a breach of contract. This Court acknowledges and accepts the specialized statutory scheme for obtaining redress for copyright infringement. Yet, irrespective of LRK's choice to pursue that scheme, LRK's copyright infringement claim arises out of the Owner Architect Agreement between itself and Steve Bryan. While LRK's copyright infringement claim would exist without the Owner Architect Agreement by virtue of the statutorily created tort of copyright infringement *this* infringement claim derives exclusively from the Owner Architect Agreement. No evidence has been presented to this Court to suggest that LRK would have drafted, revised and developed the plans, technical drawings or renderings on its own. Indeed in this case, the LRK plans, etc. were

---

[6]During oral arguments, the insurance companies provided this Court with a Fifth Circuit case interpreting "arising out of" under Texas State law. See Sport Supply Group, Inc. v. Columbia Casualty Co., 335 F.3d 453, 458 (5th Cir. 2003) ("Under Texas law, when an exclusion prevents coverage for injury 'arising out of' particular conduct, '[a] claim need only bear an *incidental relationship* to the described conduct for the exclusion to apply.'"). As stated earlier, Louisiana law governs State Farm's insurance policies.

developed because LRK contractually undertook the obligation to develop them. In this case, the copyright infringement is firmly rooted in the Owner Architect Agreement.

Without Article 6.1 of the Owner Architect Agreement, LRK could argue that their copyright infringement claim stands alone. However, such is not the case before the Court. Here, the copyright filing was specifically authorized by the Owner Architect Agreement giving LRK the right and authority to draft, develop and control the plans, drawings and renderings for Island Park-Memphis. The Owner Architect Agreement between LRK and Steve Bryan is the fountainhead for this entire action. The plans would not have been created, copyrights filed, and used for three other apartment complexes had not the Owner Architect Agreement been signed. Therefore, this Court finds as a matter of law that the advertising injuries alleged by LRK would not have occurred but for a breach of the Owner Architect Agreement.[7] Since the State Farm policies unambiguously exclude coverage for injuries arising from a breach of contract, State Farm has no duty to provide coverage.

Accordingly there are no disputes of material fact remaining and summary judgment is appropriate and State Farm is entitled to a ruling stating that their policy provides no coverage for this action.

**Steve Bryan's Personal Actions**

Further, during oral arguments, counsel for the Bryan Defendants argued that Steve Bryan's personal actions should not be imputed to them because of corporate formalities.

---

[7]During oral arguments counsel for LRK cautioned this Court that upholding this exclusion would possibly invalidate every insurance policy that had this exclusion if an insurer could find a contract that were breached. This Court disagrees. Given the high standard that insurers must reach to satisfy "but for causation" it seems unlikely that the parade of horribles suggested by counsel will come to pass. Moreover, the facts and circumstances of this case present unique legal questions that simply will not arise in most litigation.

These arguments must fail. Steve Bryan was an owner/manager of all of the named insureds and additional insureds. His actions permeate all of the business entities named as defendants.

Accordingly there are no disputes of material fact remaining and summary judgment is appropriate and State Farm is entitled to a finding that their policy provides no coverage for this action.

## CONCLUSION

The Court finds there are no genuine disputes of material fact as to the Issue of State Farm Ins. Co.'s duty to defend and no disputes of material fact as to the Issue of State Farm's duty to provide coverage.

Accordingly,

**IT IS ORDERED** that State Farm's Motion for Partial Summary Judgment on the Issue of State Farm's duty to defend [Record Document 291] be and is hereby **DENIED**.

**FURTHER IT IS ORDERED** that State Farm's Motion for Partial Summary Judgment seeking a Declaratory Judgment of no duty to provide coverage [Record Document 291] is **GRANTED**.

An Order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 30th day of December, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE